In the Matter of Antoinette LaPorte, Petitioner, v Stephen Berger, as Commissioner of the Department of Social Services of the State of New York, et al., Respondents.

First Department, June 2, 1977

*Robert D. Lippmann* of counsel *(Michael D. Hampden,* attorney), for petitioner.

*Joseph F. Wagner* of counsel *(Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for Stephen Berger, respondent.

*L. Kevin Sheridan* of counsel *(W. Bernard Richland, Corporation Counsel),* for James R. Dumpson, respondent.

MARKEWICH, J. We here review a determination by the State Department of Social Services, after a "fair hearing," affirming the determination of the New York City Department of Social Services, which had refused to reimburse petitioner for certain emergency expenses. In practical effect, the determination reviewed was based solely on the chronology of events, as here pertinent, distilled from the record of the "fair hearing" accorded petitioner on her protest against respondent's refusal to reimburse. (Each respondent, having played a part in this recital at different times, will be referred to hereinafter simply as "respondent"; the context leaves no doubt as to which of the two respondents is meant at any particular time.)

Petitioner, a longtime social services client receiving aid as mother of two dependent minor children, had her apartment, along with the rest of the building, made uninhabitable by a fire in April, 1975. She was the last tenant left in the building, from which all necessary fixtures had been removed. Her daughter was pregnant and virtually ready to deliver when, on April 30, she discovered an apartment suitable as living quarters for her mother, herself, the other child, and the new arrival. Because rodents had invaded the burned-out building, the new mother-to-be was apprehensive that the expected infant might be endangered in the shambles which her home had become. The landlord would not agree to hold the apartment pending arrangements to be made, so petitioner mother borrowed $225, using a friend's credit, to cover the first month's rent, as well as an equivalent amount for security demanded by the owner. The daughter entered the hospital either the next day, May 1, or the day following; the child was born May 4. Meanwhile, petitioner had gone to the local city office and was told to bring in the lease; no other action was taken, and apparently no record was made; this is of no moment because, in respondent's view, since the loan antedated the application, petitioner was entitled to no relief. In any event, when the lease was produced several days later, she was refused assistance because, it was said, nothing was involved except a personal obligation to the lender of the money. This refusal was confirmed after a "fair hearing," and then affirmed upon further review by respondent State department: "Section 352.7 (g) of the Regulations * * * provides * * * grants shall only be made to meet current needs," and nothing in the "Law or the Regulations * * * would authorize

* * * a grant * * * to repay a personal obligation". As herein-above indicated, this doctrinaire disposition would recognize no claim as valid in which the exigencies of the moment demand immediate relief, and wherein the niceties of protocol ·must bow to stark reality. There was no rational basis for this determination in the record, and we must perforce annul to the extent herein set forth. (See *Matter of Howard v Wyman,* 28 NY2d 434, 438.)

Though not so styled in the decision "after fair hearing," we encounter two separate types of relief sought by petitioner, neither of which was adequately processed by the city department. The department obviously never went behind the "personal debt" and never saw the "current needs" at all. We address ourselves first to that portion of the moneys sought by petitioner to meet that part of the current needs represented by one half of the personal debt, i.e., the first month's rent. In this regard see 18 NYCRR 352.6 (a). No claim has been made that a new apartment was not needed, and that at once; it would be ludicrous so to find. Nor has there been any finding that the new one is inappropriate for the four relief clients or that the rent is excessive. To the contrary, the record sustains a finding that the old apartment was uninhabitable, that there was need for the new one, and that it was appropriate for the purpose. In the time frame we see, there was no way open to satisfy the actual current needs except that which was taken, and we find the objection thereto arbitrary, unreasonable and an abuse of discretion. As to propriety of reimbursement, see *Cole v Wyman* (40 AD2d 1033) and *Sockin v Overcash* (45 AD2d 717) in each of which there was reimbursement for outlay by reason of special circumstances. We distinguish two cases in this department: *Matter of Gabaer v Lavine* (50 AD2d 539) in which no outstanding obligation to reimburse anyone else existed, and *Matter of Scalza v Lavine* (56 AD2d 740) where no necessity was shown for the original expenditure. In the case before us, it would seem that, had petitioner applied to respondent as the first step toward a new apartment, refusal would have been unjustified. Thus, it seems that the order of events dictated respondent's unrealistic determination as to the first month's rent. The old apartment obviously could not be vacated nor a new one applied for until the substitute became available, and, when that happened, events crowded upon one another with extreme rapidity: the accouchement of petitioner's daughter, coupled with the immedi-

ate need for a new home for the infant. This concatenation of circumstances not only excuses petitioner's delay in presenting a more timely application, but also provides the basis for our holding that the request for reimbursement and the emergency were so closely related in time as to present a current need. Allowance therefor should have been granted, even if necessary to invoke Part 372 of the Regulations ("Emergency Assistance to Needy Families with Children" [18 NYCRR Part 372]) as justification.

As to the month's rent paid as a deposit for security, we find an obstacle to reimbursement in 18 NYCRR 352.6 (b) wherein a certain policy is set forth to avoid abuses in the field of such deposits. Had timely application been made, doubtless respondent might well have pursued one of the alternative means set out in the regulation to provide security without any deposit by the tenant. A greater obligation rests upon respondent, as a social service agency, than merely to dole out money to clients. (See NY Const, art XVII, § 1.) It is not oversimplification to say that its primary function is the actual rendition of social service. Perhaps it may have been a part of respondent's duty, upon learning that a security arrangement was prerequisite to getting the apartment at all in a scarce market, to have negotiated with the landlord, even after the event, to substitute one of the alternative methods referred to. It is, however, too late at the time this proceeding comes to us to bring about such a result. In any event should petitioner meet the conditions of the lease, she will eventually receive the return of the deposit.

The determination by respondent-respondent Commissioner of State Department of Social Services made on or about July 31, 1975, affirming determination theretofore made by respondent-respondent Commissioner of the City Department of Social Services, denying request of petitioner-appellant for reimbursement for certain expenses, should be modified, on the law, and the petition granted to the extent of reimbursing to petitioner that portion of her expenditure herein representing the first month's rent in the new apartment and otherwise confirmed, without costs and without disbursements.

LUPIANO, J. P., SILVERMAN and EVANS, JJ., concur.

Determination of respondent State commissioner dated July 31, 1975, unanimously modified, on the law, without costs and without disbursements, and the petition granted to the extent

of reimbursing to petitioner that portion of her expenditure herein representing the first month's rent in the new apartment and otherwise confirmed.