In the Matter of ANNA MORAN et al., Petitioners, v JOHN LASCARIS, as Commissioner of the Onondaga County Department of Social Services, et al., Respondents.

Fourth Department, March 1, 1978

## APPEARANCES OF COUNSEL

*Brandt & Kelsey (John W. Brandt* of counsel), for petitioners.

*James H. Hughes (John Barnaba* of counsel), for John Lascaris, respondent.

*Louis J. Lefkowitz, Attorney-General (Anne S. Meadvin,*

*Jean M. Coon* and *Sidney L. Grossman* of counsel), for Philip
L. Toia, respondent.

## OPINION OF THE COURT

DENMAN, J.

In this article 78 proceeding petitioners Anna Moran and
Robert Moran seek to annul a decision after fair hearing of
respondent Commisssioner of New York State Department of
Social Services affirming a determination of respondent Com-
missioner of Onondaga County Department of Social Services
which terminated medical assistance to Anna Moran. Respon-
dents determined that the sale of Anna Moran's exempt
homestead for $23,500, the transfer of the proceeds thereof to
Anna's son Robert for his sole use and benefit and her failure
to disclose such transaction rendered her ineligible for medi-
cal assistance under section 366 (subd 1, par [e]) of the Social
Services Law.

Anna Moran, an 86-year-old widow, entered the James
Square Nursing Home on April 22, 1974. Application for
medical assistance was made on her behalf by her son Robert
on May 6, 1974. The application stated that Anna owned a
home at 138 Boulder Road, Solvay, New York. An application
for recertification dated April 11, 1975 and signed by Anna
Moran indicated that she was still the owner of the home-
stead. In fact, however, that homestead had been sold by
Robert on August 20, 1974 and the proceeds used entirely for
his benefit. Disclosure of the sale of the homestead and
disposition of the proceeds were not made to respondents until
April, 1976 when Robert applied for recertification for his
mother. When that disclosure was made, Anna Moran was
notified that her benefits were being discontinued because of
failure to disclose the sale of property. Petitioner Robert
Moran requested and was given a fair hearing at which he
testified that he had sold his mother's home on August 20,
1974 for $23,500 and had used all of the proceeds. On the
basis of that testimony Commissioner Toia affirmed the deci-
sion to terminate petitioner's benefits on the grounds that
under section 366 (subd 1, par [e]) of the Social Services Law
she had made a voluntary transfer of property for the purpose
of qualifying for assistance. Respondents contend that an
additional basis for termination of benefits is that Robert
failed to co-operate with the agency in submitting various
documents which were relevant to the transaction involved

here. That does not appear to be the basis for the determination by either respondent and we will therefore not consider it.

Section 366 (subd 1, par [e]) of the Social Services Law provided, in pertinent part at the time of these proceedings, as follows:

"1. Medical assistance shall be given under this title to a person who requires such assistance and who * * *

"(e) has not made a voluntary assignment or transfer of property for the purpose of qualifying for such assistance. A transfer of property made within one year of the date of application shall be presumed to have been made for the purpose of qualifying for such assistance."

Petitioners urge that since Anna Moran's homestead was clearly exempt under section 366 (subd 2, par [a], cl [1]) of the Social Services Law and since she owned the homestead at the time that she originally qualified for medical assistance, her transfer of that property was not made for the purpose of qualifying for medical assistance. The thrust of their argument seems to be that since the homestead was exempt, that exemption carried over to the proceeds emanating from its sale.

The transfer of a homestead by a recipient of medical assistance to a son or daughter without consideration has been held not to render the recipient ineligible under section 366 (subd 1, par [e]) (Matter of Mondello v D'Elia, 39 NY2d 978; Matter of Brown v Toia, 59 AD2d 1044; Matter of Mager v Berger, 57 AD2d 725; Matter of Case v Berger, 56 AD2d 714). Nor is the recipient rendered ineligible for benefits if the transferee immediately sells the house and uses the proceeds (Matter of Paige v D'Elia, 39 NY2d 981; Matter of Brown v Toia, supra), or if the transfer is clearly to defeat the future lien interests of the Department of Social Services (Matter of Mager v Berger, supra). In Mager we commented that the lapse in the statute which permits such practice was a matter for the Legislature and we note that section 366 (subd 1, par [e]), as recently amended, has cured the defect.

In the present case, however, the homestead was sold to a third party for consideration and the proceeds turned over to the son, who proceeded to deplete them. Thus until depleted, the proceeds constituted an available resource which would have been relevant to the recipient's continued eligibility and the existence of which was never disclosed to the agency. On

the record before us, however, we cannot say that petitioner Anna Moran made a "voluntary transfer of property" as required by the statute. The only evidence that Anna Moran was aware of these transactions is the testimony of Robert at the fair hearing that his mother was aware that he sold the house and used the proceeds. It appears that Robert had power of attorney for his mother's bank account and deposited and withdrew a portion of the proceeds of the sale, but whether he sold the home pursuant to a general power of attorney is not clear. Inasmuch as Anna is the recipient of the benefits and it is she who is penalized by the termination, there must of necessity be substantial evidence that she made a "voluntary transfer" which, of course, must be knowing and willful. The record does not support such finding.

It is particularly significant that if the agency had followed its own regulations, such record could have been established. 18 NYCRR 360.1 provides, in pertinent part, as follows:

"(d) *Personal interview for applicants and recipients.* A personal interview shall be conducted with all applicants who are applying or reapplying for medical assistance, and recipients who are applying for continuation of medical assistance. An application may be made by mail, but a personal interview shall be conducted. The personal interview shall be conducted with the applicant, recipient, or with a relative or other representative when the applicant or recipient cannot be interviewed due to his physical or mental condition. Such personal interview shall be conducted prior to the time a decision is made and medical assistance is authorized or reauthorized at the office of the social services district or such other place as may be arranged when the person to be interviewed is unable to come to such office.

"(e) At the time of the personal interview the social services district shall inform the applicant, recipient, relative, or other representative of: * * *

"(2) his responsibility for reporting all facts necessary for a proper determination of eligibility;

"(3) the joint responsibility of the agency and the applicant for exploring all facts concerning eligibility, and the applicant's responsibility for securing, wherever possible, records or documents to support his statements; * * *

"(6) his responsibility for notifying the agency immediately of all changes in circumstances."

There is no evidence that respondents ever had a personal interview with Anna Moran and informed her of the requirements for eligibility or, alternatively, that she was incapable of being interviewed so that such interview had to take place with her son. In the absence of evidence that Anna Moran was informed of the foregoing requirements and that she knew of the transfer of the property and willfully withheld such information, her medical assistance was improperly terminated.

This is not to say that we treat lightly misrepresentations or failure to disclose facts material to the question of eligibility under the statute. Nevertheless, the Legislature has provided specific criminal penalties, not denial of benefits, for welfare fraud. Section 366-b of the Social Services Law provides that anyone who obtains medical assistance or aids another in obtaining medical assistance by means of misrepresentations or failure to disclose material facts is guilty of a class A misdemeanor. The Legislature thus obviously intended that willful deception be punished by the criminal process rather than by denying benefits to those who are unable to maintain themselves. (See, e.g., *Matter of Taylor v Fahey*, 79 Misc 2d 22; *Matter of Hudson v Sipprell*, 76 Misc 2d .684.) Further, the regulations of the department provide for recoupment of overpayments from recipients who have willfully withheld information while the recipients continue to receive benefits. (18 NYCRR 352.31 [d] [2].)

It is thus clear that even if it had been determined that Anna Moran willfully failed to disclose an available resource in 1974, her benefits should not have been terminated in 1976 as the record establishes that she was without resources at that time. Having determined that petitioner Anna Moran is entitled to medical assistance, we must consider the question of retroactive reimbursement. 18 NYCRR 352.31 (f) provides that: "A retroactive payment to a person whose application for assistance was erroneously denied or whose grant was erroneously discontinued shall be made for a period not in excess of two months preceding the month in which the error is discovered." Retroactive reimbursement should be determined in the light of all circumstances of a particular case and should not provide a windfall. On the present record therefore, retroactive reimbursement should be limited to a two-month period immediately prior to the month in which

service of notice of entry of judgment herein is made on respondent.

The determination should therefore be annulled and the petition granted in accordance herewith.

MARSH, P. J., CARDAMONE, HANCOCK, JR., and WITMER, JJ., concur.

Determination unanimously annulled, without costs, and petition granted in accordance with opinion by DENMAN, J.