OPINION OF THE COURT
Robert H. Wagner, J.
In this CPLR article 78 proceeding petitioner, Idell Speed, seeks to annul a decision after fair hearing of respondent Commissioner of the New York State Department of Social Services (State commissioner), affirming a determination of respondent director of Monroe County Department of Social Services (county department) which denied him transportation assistance. Respondents determined that employment was available to Idell Speed and, therefore, he was not eligible for removal assistance under 18 NYCRR 310.1 (h) and section 121 of the Social Services Law and, in addition, that petitioner did not have current need pursuant to 18 NYCRR 352.7 (g). Petitioner also seeks a declaratory judgment pursuant to CPLR 3001.[1]
The factual background is not in dispute. During the spring of 1977, Idell Speed, left his home in Melrose, Florida and traveled to North Carolina where he worked as a migrant farm worker until August, 1977 when he left North Carolina and traveled with his crew and crew boss to Wyoming County in western New York. The system under which the petitioner worked operated as follows: Mr. Speed was required to go out everyday to work in the fields picking tomatoes and peppers in North Carolina and potatoes in New York. In return he was to receive 25 and 15 cents a bucket for the tomatoes and peppers, respectively, and 7.5 cents for a bag of potatoes. Instead of receiving cash for his work, the petitioner was *165 given credits which went on his ledger. The necessities needed by petitioner to live, such as room and board, were then deducted from his credits. For example, petitioner was charged $35 a week for food, characterized as very poor, whether he ate or not. After breakfast on Saturday, no more meals were provided until Monday morning. For food for Saturday and Sunday, petitioner as well as the other migrant workers would have to borrow the money from the crew leader who took them to town to purchase food. No place to cook was provided at the farm. During the entire period he worked in North Carolina and New York, the petitioner received a total of only $5 in cash and was told by his crew boss that he owed the crew boss more money than he had earned.
Mr. Speed indicated that at one point he requested the crew leader to take him to a doctor, but he was refused medical care. When he attempted to leave he was brought back to the camp. In addition, the heating was inadequate and the sleeping quarters were poor and offered no privacy.
On September 11, 1977 the Monroe County Legal Assistance Corporation removed 15 people including petitioner from the migrant farm in Wyoming County where Idell Speed worked. Petitioner’s reasons for leaving the farm were those outlined above, namely, that the housing conditions were poor, he was afraid of the crew boss, he had not been paid and he was refused medical treatment. Housing and shelter were provided to the petitioner until September 13, 1977 by Program Funding, Inc.[2] On that day, the petitioner accompanied by a representative of Program Funding, Inc. applied to the county department for transportation assistance to Melrose, Florida, and on the same day the county department orally denied assistance. A September 14, 1977 written denial by the county department listed the following as reasons for the decision:
"1. You did not have two forms of identification.
*166 "2. We verified work and housing available to you in Wyoming County where you originally had employment.[3]
"3. Failure to verify need, a bus was available to take you to Florida.
"4. According to our information you have left New York State.”
After he had been orally denied assistance by the county department, Program Funding, Inc. provided him transportation to his home in Melrose, Florida.
Petitioner requested a fair hearing to review the decision of the county department which was held on January 5, 1978 in Rochester, New York. By decision dated February 3, 1978 the State commissioner affirmed the decision of the county department. Although the county department had given four reasons in its written denial of assistance to the petitioner, the State commissioner adopted only two of these reasons in its written decision.[4]
After stating that State-charge status was applicable to the petitioner as a temporary resident under 18 NYCRR 310.3, the State commissioner as a first basis for denial found that because there was employment available in Wyoming and Monroe Counties and since petitioner was no longer seeking employment, he did not fall within the purview of 18 NYCRR 310.1 (h). This regulation provides for the removal of a person to another State when: "(i) settlement or residence or the fact that the person otherwise belongs in the other State or country has been verified or assurance of support, in whole or in part, has been given by friends or relatives; and "(ii) authorization has been received from the social services district of the locality to which return is contemplated;[5] and *167 "(iii) the social services official effecting the removal is satisfied that the welfare of the individual and the interest of the State will thereby be promoted; and "(iv) a statement of ability to travel has been secured, if the person is in a hospital or other institution, from the attending physician or the superintendent of the institution. If further care is indicated, necessary arrangements shall be made prior to removal and for the client to be met at his destination.”
The State commissioner explained her interpretation of the regulation as follows: "The aforecited regulation was not promulgated in an effort to act as a shuttle service for migrant workers around the country but rather to effectuate the removal of an individual to another state on a more permanent basis where the individual has demonstrated that his welfare will be promoted by the move and that he will have an adequate means of support in his new location.”
Subdivision 1 of section 121 of the Social Services Law provides that: "When any person who is cared for at the expense of the state or of any public welfare district has settlement or residence or otherwise belongs to or has legally responsible relatives able or friends willing to undertake the obligations to support him or to aid in supporting him in any other state or country, the department may furnish him with transportation to such state or country, provided, in its judgment the interest of the state and the welfare of such person will be thereby promoted.”
It is clear that the statute and regulation allow for the exercise of discretion on the part of the department in deciding whether to furnish an individual with transportation assistance. This discretion, however, is not unlimited and should be favorably exercised when the person’s welfare and the interest of the State will be promoted and the person has an adequate means of support in his new location. In fact, a recent Administration Letter (78 ADM 56) dated July 19, 1978 from the State commissioner expressly recognizes that transportation assistance should be granted when a person’s welfare and the interest of the State will be promoted. It states in *168 relevant part: "Transportation: Migrants may be in need of assistance to provide them with transportation expenses to return to their home state. The determination to pay transportation expenses must be made on a case-by-case basis and should be provided when the migrant’s welfare and the interest of the State will be promoted.”
The respondents here rely exclusively on section 121 of the Social Services Law and 18 NYCRR 310.1 (h) as authority for imposing a work requirement before transportation assistance could be granted. Neither the regulation nor the statute contains any language expressly imposing a work requirement before removal assistance can be provided. In the opinion of the court, while the availability of employment and ability of an applicant for transportation assistance to work might be a factor to be considered as to the person’s welfare and interest of the State, it cannot be the only factor to be considered.[6]
Despite the clear provisions of the regulation and the statute, the welfare of petitioner here was not taken into consideration. The return of the fair hearing indicates the following testimony was given:
"Hearing Officer: Let’s say the question is when you considered the application, did you consider his welfare, his well-being? Did you take that into consideration in reaching your determination?
"Ms. Cole (Hearing Examiner): No.”
In addition and in regard to the county department’s referring petitioner back to a migrant farm despite the conditions, the following testimony was given:
"The Hearing Officer: In other words, were you put on notice by anything, prior or during the time when you were *169 taking application that this could be a major bone of contention in the community as to the conditions of these work camps so as to inquire more in depth as to conditions down there?
"Ms. Cole (Hearing Examiner): No, I was not. The only thing that I might add is that my conversations with Peter Roselsky (phonetic), who is one of the farmers that I contacted, he and his wife were extremely afraid that they did not know whether there was going to be racial difficulties down there on their farm and they themselves were afraid for their own personal safety. That’s the only indication of any uproar or upheaval that I have.
"Hearing Officer: Well, did that not cause you to look in more depth before making your determination as to conditions down there, whether it would have been to the benefit or detriment of Mr. Speed to return?
"Ms. Cole: No.”
In accordance with the regulation and statute, the respondents should have considered whether the petitioner’s welfare and the State’s interest would have been promoted by removal to Florida. While the availability of employment might be a factor to be considered, it should not foreclose a consideration of all other surrounding circumstances. Although remand for a consideration of whether petitioner’s welfare and the interest of the State would be promoted by removal might seem appropriate, such action is unnecessary here since I agree that petitioner has no unmet needs.
The State commissioner as her second reason for denying the petitioner transportation assistance relied on 18 NYCRR 352.7 (g) which provides that assistance grants shall be made only to meet current needs. The record shows that Program Funding, Inc. paid for the transportation on September 13, 1977 and petitioner has incurred no personal obligation to repay it. In the absence of any personal obligation on the part of petitioner to repay thé transportation expenses, this court is compelled to affirm the fair hearing decision (cf. Matter of Shafron v Smith, 60 AD2d 581; Matter of La Porte v Berger, 57 AD2d 425; Williams v Lavine, 47 AD2d 804).
In passing, I note that even if it could be said that petitioner had current need at the time of application and was otherwise eligible, reimbursement of the dollar amount for the cost of transportation at this time and under the circumstances presented would be denied since it would in effect, *170 result in a windfall to petitioner (see, generally, Matter of Moran v Lascaris, 61 AD2d 405).
Accordingly, the fair hearing decision is affirmed and the petitioner’s request for declaratory judgment is denied.

. Petitioner seeks an order declaring the following: (1) that transportation assistance provided for in section 121 of the Social Services Law be available to otherwise eligible migrant farm workers as a form of the emergency assistance provided for by the New York State Constitution and the Social Services Law and its regulations, and that such transportation assistance shall be provided without imposing a work requirement as a precondition to its receipt, (2) that 18 NYCRR 310.1 (h) (ii) violates the United States and New York State Constitutions and the Social Services Law, and (3) issue a judgment declaring that 18 NYCRR 310.1 (h) (i) as applied to petitioner, violates the New York State Constitution and the Social Services Law and its regulations.
The State commissioner’s cross motion to dismiss the declaratory judgment action on the basis that declaratory relief may only be granted in an action based upon a summons and complaint is denied (see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.12).

. Program Funding, Inc. (now known as Rural New York Farmworker Opportunities, Inc.) is a private not-for-profit corporation of the State of New York which provides employment training and supportive services to migrant and seasonal farm workers in New York State. It is funded by United States Department of Labor, under section 303 of title III of the Comprehensive Employment and Training Act of 1973 (87 US Stat 839, amd 88 US Stat 1845). Under the terms of its contract with the Department of Labor, Rural New York, Inc. agrees (a) not to use Federal funds to supplant local funds which would otherwise be made available, and (b) to provide services only to persons meeting the eligibility criteria of the Comprehensive Employment and Training Act of 1973.

. At the time of application, the Monroe County Department of Social Services called the Wyoming County Department of Social Services and was given the names of five farmers in that county as well as someone in the Department of Labor to contact. The Monroe County Department of Social Services then contacted the farmers who stated that they had work and housing available. A representative from the Department of Labor also stated work was available in Wyoming County.

. The State commissioner expressly found that the county department’s determination to refer petitioner back to Wyoming County was improper. In addition, the State commissioner did not adopt the county department’s finding that petitioner failed to produce proper identification.

. The petitioner’s position that 18 NYCRR 310.1 (h) (ii) as written and applied to him violated his constitutional due process and equal protection rights or otherwise violated the United States and New York State Constitutions and Social Services *167 Law, cannot be sustained. The Court of Appeals has stated that "[it] is well settled that the construction given * * * regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v Wyman, 28 NY2d 434, 438.) The respondents here did not construe or even attempt to apply this provision to Idell Speed and in the absence of a clear necessity, this court will not declare such provision illegal on its face.

. [2] 18 NYCRR 310.3 (c) and 18 NYCRR 370.2 are intended to provide home relief assistance to migrant workers whose needs are short term or emergent. 18 NYCRR 310.2 and section 121 of the Social Services Law provide for removal or transportation expenses. These appear to be separate forms of assistance. This is not to say, however, that in a proper case, transportation assistance could not be considered as an emergency situation but certainly I find no authority in the New York State Constitution, Social' Services Law or regulations to support the position that all applications for transportation assistance be automatically treated as applications for emergency assistance. Therefore, petitioner’s request for an order declaring that transportation assistance provided for by section 121 of the Social Services Law be available as a form of emergency assistance to all otherwise eligible migrant farm workers without imposing a work requirement is denied. It might also be noted that petitioner here testified that he applied for transportation assistance, not emergency assistance.