JOSEPH SCARPUZZA et al., Petitioners, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Second Department, March 17, 1980

238

## APPEARANCES OF COUNSEL

*Toby Golick (William Teltser* and *Steven Pretsfelder* on the brief), for petitioners.

*Robert Abrams, Attorney-General (Sanford Peyser* of counsel), for State Commissioner, respondent.

*Allen G. Schwartz, Corporation Counsel (L. Kevin Sheridan* of counsel), for City Commissioner (relying upon the brief of the respondent State Commissioner), respondent.

GULOTTA, J.

The principal issue raised in this proceeding is whether the "voluntary transfer" provision of section 366 (subd 1, par [e]) of the Social Services Law, a component of New York's comprehensive medical assistance scheme (i.e., Medicaid), is violative of the supremacy clause (US Const, art VI, cl 2) by reason of its conflict with controlling Federal legislation.[1] We conclude that the question must be answered

---

1. Section 366 of the Social Services Law provides, in pertinent part, as follows:

"1. Medical assistance shall be given under this title to a person who requires such assistance and who * * *

"(e) has not made a voluntary transfer of property (i) for the purpose of qualifying for such assistance, or (ii) for the purpose of defeating any current or future right to recovery of medical assistance paid, or for the purpose of qualifying for, continuing eligibility for or increasing need for medical assistance. A transfer of property made within eighteen months [formerly, one year] prior to the date of application shall be presumed to have been made for the purpose specified in subparagraph (i); a transfer of property that would be exempt from consideration under this title, made within

in the affirmative, at least insofar as it relates to applicants such as Mr. Scarpuzza who would, except for income and resources, be eligible for Supplemental Security Income (SSI). As a subsidiary issue, petitioners assail the constitutionality of another aspect of the same law, i.e., the "recovery" provision of section 369 (subd 1, par [b]).[2] However, on this branch of petitioners' case, we believe that they presently lack standing to raise the issue and, accordingly, decline to consider the question.

## I

Petitioners herein, Joseph Scarpuzza (age 89 at the commencement of this special proceeding) and his wife, Pietrina (age 86), were the owners for some 56 years of a two-family residence located at 419 Stanhope Street in Brooklyn. The Scarpuzzas were at all relevant times the occupants of one of the two dwelling units situated therein, the other being rented at the rate of some $300 per month. In addition to this rental income the Scarpuzzas' only source of regular income consisted of Mr. Scarpuzza's union pension and the couple's joint Social Security benefits.

On March 7, 1978 Joseph Scarpuzza fell and sustained a

---

eighteen months [formerly, one year] prior to the date of application without fair and reasonable consideration or made, without prior approval of the social services official, at any time after the application or determination of eligibility, shall be deemed to have been made for one or more of the purposes specified in subparagraph (ii) hereof. The social services official shall approve such an assignment or transfer if he determines based on the transfer agreement that the applicant or recipient will receive fair and reasonable consideration for such transfer. Such consideration shall be applied as a resource available to meet the person's medical needs as it becomes available unless all or a part of it subsequently qualifies as exempt property under subdivision two of this section."

2. Section 369 provides, *inter alia:*

"1. All provisions of this chapter not inconsistent with this title shall be applicable to medical assistance for needy persons and the administration thereof by the public welfare districts. Any inconsistent provision of this chapter or other law notwithstanding * * *

"(b) there shall be no adjustment or recovery of any medical assistance correctly paid on behalf of such individual under this title, except from the estate of an individual who was sixty-five years of age or older when he received such assistance, and then only after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under twenty-one years of age or is blind or permanently and totally disabled, provided, however, that nothing herein contained shall be construed to prohibit any adjustment or recovery for medical assistance furnished pursuant to subdivision three of section three hundred sixty-six of this chapter."

fracture of the hip which necessitated his long-term hospitalization. This condition was, in turn, aggravated by a pre-existing heart ailment and arthritis, so that Mr. Scarpuzza (who is now deceased) would ultimately spend the better part of his remaining years in either Wyckoff Heights Hospital or the Lawrence Nursing Home. Insofar as it appears on the present record, Mrs. Scarpuzza, who also suffers from a heart condition, continues to reside in the house. Some two weeks after Mr. Scarpuzza entered the hospital, the petitioners conveyed all right, title and interest in their two-family residence to their son, Vincent, who had been raised in the house. According to the petitioners, this transfer was effectuated in the utmost good faith, and was occasioned by the necessity "of insuring the home's continued maintenance and existence" as the elderly petitioners were no longer physically or financially capable of maintaining the house themselves.

The cost of Mr. Scarpuzza's lengthy hospitalization was initially borne by a Blue Cross/Blue Shield insurance policy. This policy was eventually exhausted, however, and on May 2, 1978, Joseph Scarpuzza applied for medical assistance under New York State's Medicaid program. By "notice of non-acceptance" dated May 12, 1978, the New York City Department of Social Services *denied* his application based on petitioners' "transfer of property within the year [now, 18 months] prior to applying for medicaid", i.e., the conveyance of their residence at 419 Stanhope Street to their son, Vincent. Petitioner Joseph Scarpuzza thereupon demanded a statutory fair hearing, which was conducted on June 16, 1978. In a written decision dated August 22, 1978, the State commissioner affirmed the determination of the local agency and rejected the application on the ground that conveyance of the two-family residence to Vincent Scarpuzza without consideration was made "in order to qualify for medical assistance and [for] the purpose of defeating a right of recovery for medical assistance paid" and, further, that there was no evidence of "any valid debtor-creditor relationship * * * between [petitioner] and his son." Accordingly, the commissioner concluded, Mr. Scarpuzza had failed to overcome the statutory presumption contained in section 366 (subd 1, par [e]) of the Social Services Law.[3] As it

---

3. The commissioner's decision failed to state whether or not the property in issue was an exempt homestead, presumably because the 1977 amendment to section 366 (subd 1, par [e]) made the foregoing irrelevant (see n 11, *infra*). While the agency's representative at the fair hearing suggested that the two-family residence should be

has never been claimed that Mr. Scarpuzza's actual or imputed income was in excess of the applicable limit or that he was otherwise ineligible for assistance, the ultimate propriety of his disqualification must rise or fall on the afore-stated ground.

Upon being informed of the commissioner's decision, petitioners commenced the instant article 78 proceeding in the Supreme Court, Kings County, on or about October 16, 1978, demanding, *inter alia,* that the determination be annulled on constitutional and evidentiary grounds, and that the commissioner be directed to provide Mr. Scarpuzza with the necessary medical assistance. Pursuant to CPLR 7804 (subd [g]), Special Term transferred the matter to this court for disposition on December 18, 1978. On February 18, 1979 petitioner Joseph Scarpuzza died and on December 17, 1979, his son, Vincent, was appointed administrator of his estate, thus enabling this proceeding to continue.[4] Since our review of the record comports with the commissioner's determination that the subject transfer was not effected for "fair" consideration, and thus falls within the statutory presumption[5] (see, e.g., *Matter of Benvenuto v Smith,* 69 AD2d 773; *Matter of Madeley v Bates,* 56 AD2d 629; *Matter of Clement v Lavine,* 50 AD2d 63), we turn our attention directly to the legal issues.

## II

In 1965, Congress enacted title XIX of the Social Security Act (US Code, tit 42, §§ 1396-1396k), which is more commonly known as the Medicaid program. Intended to provide partial Federal funding of the cost of providing medical care to the disadvantaged,[6] Medicaid is a co-operative Federal-State pro-

considered "nonexempt" (citing State Administrative Bulletin, Transmittal 77 ADM-73, dated Sept. 2, 1977), this suggestion is erroneous and contrary to the applicable definition of the term "homestead" (see 18 NYCRR 360.23 [b]).

4. Pending the appointment and substitution of a personal representative for Mr. Scarpuzza, this proceeding was held in abeyance (see *Matter of Vitale,* 68 AD2d 927; *Wichlenski v Wichlenski,* 67 AD2d 944, 946).

5. The Department's representative stated at the fair hearing that the house was valued, minimally, at $10,500, an assertion which has not been contested by the petitioners. In addition, it is virtually conceded that the rental income derived from the second apartment was some $3,600 annually. No testimony was offered at the fair hearing that the transferee, Vincent, assumed any mortgage liability as an offset to the fair market value of the house, or that the conveyance to him was in payment for any outstanding indebtedness. Concededly, no money changed hands during the transaction.

6. For general legislative intent, see S Rep No. 404, 89th Cong, 1st Sess 74-76,

gram operated under State direction, but subject to Federal statutory and regulatory guidelines. Although no State is required to participate in Medicaid, Federal law provides that every State desiring to do so must adopt a statutory plan detailing the extent of coverage and comporting with Federal law.[7] Thus, the plan must specify those individuals who will be eligible for its benefits, and may not exclude persons already receiving Federally-funded public assistance, i.e., the "categorically needy."[8] In addition, a State may elect, at its option, to extend Medicaid benefits to those not already receiving Federally-funded public assistance but who are nevertheless deemed "medically needy" by virtue of their limited income and resources.[9] However, if a State opts to include aid to the "medically needy", it "must observe the additional federal requirements applicable to this group of recipients" (Aitchison v Berger, 404 F Supp 1137, 1141, citing US Code, tit 42, 1396a, subd [a], par [10], cl [C], affd 538 F2d 307, cert den 429 US 890; see, also, Friedman v Berger, 547 F2d 724, 726, cert den 430 US 984). It is these "additional federal requirements" which will form the focus for our inquiry.

The State of New York has elected to participate in the Federal Medicaid program (see Social Services Law, § 363 et seq.), and has further elected to extend the payment of benefits thereunder to the "medically needy" upon their satisfaction of certain eligibility requirements respecting income and available resources (Social Services Law, § 366; see, also, Aitchison v Berger, supra, p 1141). Pre-eminent among them, at

---

reprinted in [1965] US Code, Cong & Admin News, 1943, 2014-2015; see, also, Note, State Restrictions on Medicaid Coverage of Medically Necessary Services, 78 Col L Rev 1491.

7. The required elements of a State Medicaid plan are set forth in subdivision (a) of section 1396a of title 42 of the United States Code ("A state plan for medical assistance must * * *").

8. The "categorically needy" are those "aged, blind or disabled individuals or families and children who are otherwise eligible for medicaid and who meet the financial eligibility requirements for AFDC [Aid to Families with Dependent Children], SSI [Supplemental Security Income], or an optional State supplement [see, e.g., subchapters I, X, XIV and XVI of the Social Security Act]" (42 CFR 435.4; see US Code, tit 42, § 1396a, subd [a], par [10], cl [A]).

9. As defined in 42 CFR 435.4, the term "medically needy" refers to "aged, blind, or disabled individuals or families and children who are otherwise eligible for medicaid and whose income and resources are above the limits prescribed for the categorically needy but are within limits set under the medicaid State plan" (see US Code, tit 42, § 1396a, subd [a], par [10], cl [CP]. Somewhat less technically, the "medically needy" are those individuals whose income and resources are "too low to meet their medical expenses * * * but too high to qualify them for * * * federal cash grant program[s]" such as SSI and AFDC (Friedman v Berger, 547 F2d 724, 726, cert den 430 US 984).

least for present purposes, are the "voluntary transfer" provisions of section 366 (subd 1, par [e]), which provide, *inter alia,* that an applicant may not have made a voluntary transfer of assets "for the purpose of qualifying for such assistance" (par [e], cl [i]) or "for the purpose of defeating any current or future right to recovery of medical assistance paid" (par [e], cl [ii]), and that any transfer of property for less than fair consideration made within 18 months prior to the filing of an application will be presumed to have been made for one of the proscribed reasons.[10] Notably, the transfer of property which would otherwise be exempt, e.g., a homestead, is specifically included within the foregoing rule.[11] As has already been indicated, it is this provision (Social Services Law, § 366, subd 1, par [e]) and its accompanying regulation (18 NYCRR 360.8),[12] which have been challenged as being in derogation of

10. For the complete text of section 366 (subd 1, par [e]) of the Social Services Law, see n 1, *supra.*

11. So much of the present law (Social Services Law, § 366, subd 1, par [e]) as specifically proscribes the transfer of property which would otherwise be exempt is directly attributable to a contrary construction of the predecessor statute by the Court of Appeals. Prior to 1977, section 366 (subd 1, par [e]) of the Social Services Law provided, in pertinent part, that medical assistance benefits would only be paid where an applicant had "not made a voluntary assignment or transfer of property for the purpose of qualifying for such assistance" and that "[a] transfer of property made within one year of the date of application shall be presumed to have been made for the purpose of qualifying for such assistance." The statute was subsequently construed by the Court of Appeals to be inapplicable to an exempt homestead on the ground, *inter alia,* that if an applicant for assistance could retain his residence as an exempt resource and still receive assistance, then it was totally illogical to conclude that a gratuitous transfer of the foregoing was accomplished for the purpose of qualifying for such assistance *(Matter of Mondello v D'Elia,* 39 NY2d 978, 980, revg 49 AD2d 582; see *Matter of Fluette v D'Elia,* 68 AD2d 889; *Matter of Troll v Toia,* 68 AD2d 927, citing *Matter of Case v Berger,* 56 AD2d 714; *Matter of Moran v Lascaris,* 61 AD2d 405, 407; *Matter of Brown v Toia,* 59 AD2d 1044; *Matter of Mager v Berger,* 57 AD2d 725; *Matter of Clark v Lavine,* 55 AD2d 932; cf. *Matter of Paige v D'Elia,* 39 NY2d 981 [applicant not rendered ineligible for benefits even though transferee without consideration immediately sells the residence and utilizes the proceeds]). In an effort to close this "gap" in the statute *(Matter of Mondello v D'Elia, supra,* p 980), the law was subsequently amended to its present form (see L 1978, ch 612, § 1; L 1977, ch 755, § 1; for legislative intent, see Legislative Memorandum, 1977 McKinney's Session Laws of NY, pp 2422-2423).

12. 18 NYCRR 360.8 provides as follows:

"Transfer of property. (a) In determining eligibility for medical assistance, if a transfer or assignment of real or personal property has been made within 18 months prior to the date of application or at any time after a determination of eligibility without the prior approval of the social services official, such transfer or assignment shall be presumed to have been made for the purpose of qualifying for such assistance, or for the purpose of defeating any current or future right to recovery of medical assistance paid.

controlling Federal authority. As a secondary issue, petitioners have attacked the constitutionality of section 369 (subd 1, par [b]) of the Social Services Law, which provides, *inter alia,* for the recovery of previously paid Medicaid benefits against the estates of certain recipients.[13]

### III

As a preface to our analysis of the key issue raised in this proceeding, it is well to observe (as the commissioner has done) that *former section 366 (subd 1, par [e]) of the Social Services Law was previously sustained by this court in Matter of Gardner v Lavine* (56 AD2d 930), wherein we rejected the argument that the statute created a conclusive, presumption which violated the due process clause. This court observed at that time that the statute was undoubtedly constitutional, as the presumption created thereby "[was] indeed, quite easily rebutted by showing that the transaction had been founded upon fair consideration, a showing which has been demonstrated in numerous cases" *(Matter of Gardner v Lavine, supra,* p 931). Other courts have accepted this line of reasoning (see, e.g., *Matter of Rinefierd v Blum,* 66 AD2d 351, 354-355; *Matter of Anson v Kitchin,* 64 AD2d 752, 753, both citing *Gardner),* but, in our view, *Gardner* can no longer be considered controlling (1) for the obvious reason that the statute has since been materially amended,[14] and (2) more significantly, because the *Gardner* court was never asked to rule on the question presented here, but rather was called upon to assay the constitutionality of the statute *solely in terms of the viability of the statutory presumption,* i.e., the circumstances

---

"(b) If such transfer or assignment was made within 18 months prior to the date of application or at any time after a determination of eligibility without the prior approval of the social services official for medical assistance, the applicant shall prove to the satisfaction of the social services official that such transfer or assignment was a normal transaction not done for the purpose of qualifying for medical assistance.

"(c) If the transfer or assignment is found to have been made for the purpose of qualifying for medical assistance, or for the purpose of defeating any current or future right to recovery of medical assistance paid, such assistance shall be denied.

"(d) The social services official shall approve such assignment or transfer if he determines, based on the transfer agreement, that the applicant or recipient will receive fair and reasonable consideration for such transfer. Such consideration shall be applied as a resource available to meet the person's medical needs as it becomes available, unless all or part of it subsequently qualifies as exempt property under section 366.2 of the Social Services Law."

13. The text of Social Services Law (§ 369, subd 1, par [b]) is set forth at n 2, *supra.*

14. See notes 1 and 2, *supra.*

under which it could be rebutted and whether such a showing was consistent with the principles of due process.

Although cognizant of the fact that our conclusion in *Gardner* is contrary to that reached by several Federal courts in passing upon sister State transfer-of-assets statutes (see, e.g., *Buckner v Maher,* 424 F Supp 366, affd 434 US 898 [Conn]; *Udina v Walsh,* 440 F Supp 1151 [Missouri]; *Owens v Roberts,* 377 F Supp 45 [Fla]; cf. *United States Dept. of Agriculture v Murry,* 413 US 508, 514; *Vlandis v Kline,* 412 US 441, 451-452), it is our belief that the foregoing cases are distinguishable, and that were the only question presented here the validity of the current statutory presumption (including, as it does, the transfer of *exempt* property) we would have little difficulty adopting the sensible approach employed by the Fourth Department in *Matter of Saviola v Toia* (63 AD2d 849) in sustaining the statute. Thus, the *Saviola* court, when faced with a gratuitous transfer of nonexempt assets under the 1977 amendment to the statute, employed an *objective* test to determine whether the transfer had been motivated by the impermissible purpose of qualifying for medical assistance and concluded, *inter alia,* that as the record established "that [the] petitioner made the transfer of assets at a time when she was suffering from no serious disability and had no reason to believe that she would require extensive medical assistance or nursing home care in the foreseeable future", the statutory presumption had been rebutted (63 AD2d, at p 850). Inasmuch as this objective test of time can likewise be employed with respect to the transfer of an exempt homestead, no problem with the statutory presumption would appear. However, the pivotal issue now before this court for the first time concerns the question of Federal pre-emption, the supremacy clause and the effect upon our statute of the Federal requirement of "comparability" in the standards for determining Medicaid eligibility between the "categorically needy" and the "medically needy".[15]

The Social Security Act (US Code, tit 42, § 1396a, subd [a], par [10], cl [C], subcl [i]), plainly requires that a State which has elected to include the "medically needy" in its Medicaid plan *must:* "mak[e] medical assistance available to all individ-

---

15. When used in this context, "comparability" refers to the Federal requirement that the eligibility criteria for the "medically needy" under a State Medicaid Plan (assuming that such optional coverage is extended) be no more restrictive than the eligibility criteria for the "categorically needy".

uals who would, except for income and resources, be eligible for aid or assistance under * * * supplemental security income * * * and who have insufficient * * * income and resources to meet the costs of necessary medical and remedial care and services". This "comparability" requirement is further echoed by other aspects of the act, e.g., the requirement that:

"A State plan for medical assistance must * * * .

"(17) include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which * * * (B) provide for taking into account *only such income and resources as* * * * (in the case of any applicant or recipient who would, except for income and resources [fall into the class of the 'categorically needy', e.g., be eligible to receive] * * * supplemental security income benefits * * *) *would not be disregarded* * * * *in determining his eligibility for such aid, assistance or benefits*" (US Code, tit 42, § 1396a, subd [a], par [17]; emphasis supplied). Although not unambiguous, the Second Circuit Court of Appeals has construed the foregoing provision thus: "[F]or persons * * * who would be eligible to receive SSI benefits because of their age, blindness or disability were it not for their income, state standards *must* provide that income which is *disregarded* in determining SSI eligibility *also be disregarded* in determining eligibility for * * * Medicaid" *(Friedman v Berger,* 547 F2d 724, 728, *supra;* emphasis supplied). Moreover, any doubt as to whether the foregoing is the proper construction or would be equally applicable to the situation regarding "resources" may be quickly resolved by reference to the Senate report accompanying the 1965 bill, which plainly declares that "[u]nder the bill, if a State extends the program to those persons not receiving assistance under titles I, IV, X, XIV, and XVI [the 'categorically needy'], the determination of financial eligibility [for this additional class, i.e., the 'medically needy'] *must be on a basis that is comparable* as among the people who, except for their income and resources, would be recipients of money for maintenance under the other public assistance programs." (S Rep No. 404, 89th Cong, 1st Sess, 78 reprinted in [1965] US Code, Cong & Admin News, 1943, 2017; emphasis supplied.)[16] It is

---

16. In a slightly different context but to the same effect, see the Department of Health, Education and Welfare's amplification of this requirement, *inter alia,* precluding States from deeming a spouse's income available to a Medicaid applicant where it would not be considered available *for purposes of determining eligibility for SSI* (42 Fed Reg 2684, 2685 [1977]).

not surprising, therefore, that the corresponding Federal regulation (42 CFR 435.401 [c]) provides: "The agency must not use requirements for determining eligibility for optional coverage groups that are * * * (2) For aged, blind, and disabled individuals, *more restrictive* than those used under SSI". Importantly, it appears to be well settled that a person desiring SSI who has resources in excess of the eligibility limit is permitted to dispose of or transfer those assets prior to his application in order to qualify for assistance and may, under certain circumstances at least, obtain conditional SSI and Medicaid benefits pending their disposal (see US Code, tit 42, § 1382b, subd [b]; 42 CFR 435.120[b]; 20 CFR Part 416; see, also, *Fabula v Buck,* 598 F2d 869; *Caldwell v Blum,* US Dist Ct, NDNY, Nov 29, 1979, MUNSON, J.).[17]

Given the foregoing and given the previously established express Federal mandate of comparability, it follows *ex necessitate* that an individual seeking Medicaid benefits who would, except for his income and resources, be eligible for SSI should be permitted to dispose of or transfer his assets in the same way that an SSI applicant can and still remain eligible for assistance. As has been indicated, however, section 366 (subd 1, par [e]) of the Social Services Law provides to the contrary, as it purports to proscribe any transfer of assets for the purpose of qualifying for Medicaid or defeating a future right of recovery, thus penalizing aged applicants such as Mr. Scarpuzza by adding a qualification to eligibility which is not sanctioned by the Social Security Act (see US Code, tit 42, § 1396a, subd [a], par [10], cl [C], subcl [i]). Since it is axiomatic that "once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it" *(Burns v Alcala,* 420 US 575, 580; see *Philbrook v Glodgett,* 421 US 707, 719; *Van Lare v Hurley,* 421 US 338; *Shea v Vialpando,* 416 US 251; *Carleson v Remillard,* 406 US 598; *Townsend v Swank,* 404 US 282; *Lewis v Martin,* 397 US 552; *King v Smith,* 392 US 309; *Buckner v Maher,* 424 F Supp 366, affd 434 US 898, *supra;* see, also, *Matter of Lumpkin v Department of Social Servs. of State of N. Y.,* 45 NY2d 351, 355; *Matter of Dumbleton v Reed,* 40 NY2d 586, 587; *Matter*

---

17. To the same effect, see, Social Security Claims Manual, § 12507. Note, however, that the State commissioner has repeatedly rejected the Claims Manual as a source of mandatory Federal regulation (see *Caldwell v Blum,* US Dist Ct, NDNY, Nov. 29, 1979, n 25). Note also in this regard that New York State does not fall within the provisions of 42 CFR 435.321 regarding States which impose more restrictive eligibility requirements on Medicaid recipients than are used under SSI (18 NYCRR 360.3).

*of Martin v Lavine,* 39 NY2d 72, 75), it is our belief that the statute under review (Social Services Law, § 366, subd 1, par [e]) as well as its implementing regulation (18 NYCRR 360.8) must be deemed to be in direct conflict with controlling Federal law and therefore invalid, at least insofar as they purport to affect applicants such as Mr. Scarpuzza, who would, except for income and resources, be eligible for SSI.

■ A similar rationale was recently utilized by the Fourth Circuit Court of Appeals in the case of *Fabula v Buck* (598 F2d 869, *supra* [wherein the court struck down a Maryland transfer of assets regulation similar to the New York restriction on the basis of the comparability requirement])[18] and, even more recently, the United States District Court for the Northern District of New York employed a similar analysis to conclude, *inter alia,* that the probable invalidity of section 366 (subd 1, par [e]) of the Social Services Law was sufficiently great to warrant the issuance of a preliminary injunction barring the State commissioner from enforcing that subdivision and its accompanying regulation pending a trial of the underlying action (see *Caldwell v Blum, supra).* Moreover, the conclusion that the statute expressly violates the Federal scheme is further strengthened by the fact that regional officials of the Department of Health, Education and Welfare have formally ruled that New York's statutory restriction is impermissible.[19] In this regard, it is well settled that " '[t]he interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in con-

---

**18.** The Maryland regulation at issue there, COMAR § 10.09.-1.10(D) provided, in pertinent part, as follows:

"Transfer of Assets.

"(1) An applicant who assigns or transfers assets, including those [which would be excluded in determining financial eligibility,] with the intent of becoming eligible for Medical Assistance or to circumvent the Program's recovery procedures during the 3 years before filing application is ineligible if the transfer results in a loss of a resource which would have been available to meet medical expenses or in the loss of a potential source of recovery * * *

"(2) Assets transferred by a recipient, while receiving Medical Assistance, for the purpose of continuing to receive assistance or to circumvent recovery procedures, and without the consent of the local department of social services, are considered an existing asset affecting current and continued eligibility for a period not to exceed 3 years.

"(3) The unreported transfer of assets for the purpose of circumventing the provision of § D(1) and (2), above, will result in the recipient's ineligibility."

**19.** The ruling is in the form of a letter from the HEW Regional Medical Director to respondent State Commissioner of Social Services dated August 4, 1978 (see, also, *Fabula v Buck,* 598 F2d 869, 873, n 10).

struing the statute'" *(Miller v Youakim,* 440 US 125, 144, quoting *Youakim v Miller,* 425 US 231, 235-236; see, also, *Quern v Mandley,* 436 US 725, 743-744, n 19; *New York Dept. of Social Servs. v Dublino,* 413 US 405, 421) and, if not irrational or unreasonable, should be upheld *(Matter of Howard v Wyman,* 28 NY2d 434, 438). As the *Fabula* court noted (598 F2d, at p 873, *supra),* "[w]e believe that these administrative interpretations are reasonable and consistent with the statute, and are entitled to be followed by the courts."

## IV

In opposition, the commissioner argues, in substance, that the proffered construction is erroneous in that it fails to appreciate that protection of the public fisc and limited Social Services resources against depletion by applicants motivated by fraud or greed is a valid governmental interest (see *Lavine v Milne,* 424 US 577, 584; *New York Dept. of Social Servs. v Dublino, supra,* p 413; *Matter of Rinefierd v Blum,* 66 AD2d 351, 355, *supra),* and that the use of reasonable presumptions to combat fraud has been sustained in the past (see *Lavine v Milne, supra,* pp 584-585). Thus, the commissioner maintains that "there is no clear showing that Congress had evinced an intent to preempt the states from denying benefits to applicants who have utilized fraudulent measures to qualify for assistance", and urges us to adopt an analysis similar to that adopted by the Fourth Department in *Matter of Rinefierd v Blum (supra).* This we decline to do.

Unlike *Dublino,* we are not here dealing with "complementary" State "regulations promulgated within the legitimate sphere of state administration." *(New York Dept. of Social Servs. v Dublino,* 413 US 405, 422, *supra.)* The plain fact is that New York's proscription against the transfer of assets represents a direct "conflict of substance as to eligibility provisions" *(New York Dept. of Social Servs. v Dublino, supra,* p 423, n 29, citing, *inter alia, Jefferson v Hackney,* 406 US 535, 541), and must therefore yield to the Federal law. A State's interest in protecting Social Services funds may not manifest itself in a statutory scheme which wrongfully excludes individuals who were intended to be eligible under the applicable Federal standards (see *Townsend v Swank,* 404 US 282, 291, *supra; Fabula v Buck,* 598 F2d 869, *supra; Aitchison v Berger,* 404 F Supp 1137, 1141, *supra).* Moreover, it does not necessarily follow that by striking down the well-intended

shield of section 366 (subd 1, par [e]) of the Social Services Law as it relates to this particular class of applicants we are opening the door to fraud in New York. As the Court of Appeals commented in *Matter of Mondello v D'Elia* (39 NY2d 978, 980) concerning the relationship between the former statute and section 369 (subd 1, par [b]) of the Social Services Law: "[While] another part of the statute might entitle the disbursing department to recover for its expenditures from the estate of the assistance recipient (Social Services Law, § 369, subd 1, par [b]) * * * [t]his does not solve the conundrum but, at best, suggests a purpose for a statute which would control transfers of exempt homestead property, not because they are done to qualify for assistance, but because they impair the possibility of a future recoupment. The remedy, if there should be one, is legislative." Similarly, the solution here, if there be one, is not to deny benefits to those who have transferred assets in transactions that are objectively discerned as intended to qualify the transferee for medical assistance or to defeat a future right of recovery; the comparability requirement of section 1396a of title 42 of the United States Code precludes this. However, one possibility which suggests itself is that the Legislature might create a lien or a right of recovery in favor of the Department of Social Services against the beneficiaries of such transfers to the extent of the benefits received by their transferor (cf. Debtor and Creditor Law, art 10; *Crabb v Estate of Mager,* 66 AD2d 20, 24-26). Although perhaps inadvisable for reasons not now apparent, at least such a remedy would not appear to be inconsistent with the provisions of the act itself (see US Code, tit 42, § 1396a, subd [a], par [18]).

## V

Petitioners' final contention involves section 369 (subd 1, par [b]) of the Social Services Law, the section which, under certain circumstances, permits a recovery against the estate of an individual who has, during his lifetime, received medical assistance benefits.[20] The argument is essentially that this section violates the equal protection clause insofar as it permits recovery against the estate of an individual who has received medical assistance benefits *based solely on his age at*

---

20. See n 2, *supra.*

*the time of receipt* (i.e., if he was 65 years of age or older). Suffice it to say that since the commissioner has yet to attempt any such recovery against the estate (nor could she do so under the statute), petitioners are not now technically aggrieved by the operation of this section and thus lack standing to raise the issue (see *Oriental Blvd. Co. v Heller,* 27 NY2d 212, 220; accord, *Jensen v City of New York,* 42 NY2d 1079, 1084 [COOKE, J., dissenting]; *McCallin v Walsh,* 64 AD2d 46, 64, affd 46 NY2d 808).

■ Accordingly, we conclude that section 366 (subd 1, par [e]) of the Social Services Law, as well as its implementing regulation (18 NYCRR 360.8), is invalid as applied to individuals who, but for their income and resources, would be eligible for SSI, and that the commissioner may not, in the future, deny Medicaid assistance to any such individual based upon a preapplication transfer of assets for less than fair consideration (see *Matter of Lee v Smith,* 87 Misc 2d 1018, 1024, affd 58 AD2d 528, affd 43 NY2d 453). Therefore, the petition is granted to the extent that the commissioner is directed to provide petitioners with such retroactive and prospective medical assistance benefits as they may be entitled, and the matter is hereby remanded to the commissioner for the appropriate calculation.

MOLLEN, P. J., DAMIANI and RABIN, JJ., concur.

On the court's own motion, Vincent Scarpuzza, as administrator of the estate of Joseph Scarpuzza, is substituted as a petitioner herein.

Petition granted to the extent that the determination is annulled, on the law, without costs or disbursements, the application for medical assistance is granted and it is determined that paragraph (e) of subdivision 1 of section 366 of the Social Services Law, and its implementing regulation (18 NYCRR 360.8), are invalid as applied to individuals who, but for their income and resources, would be eligible for Supplemental Security Income (SSI). The proceeding is otherwise dismissed and the matter is remitted to the respondent State Commissioner for further proceedings consistent with the opinion herein.