In the Matter of ELIE ARONOWITZ et al., Petitioners, v BLANCHE BERNSTEIN, as Commissioner of the New York City Department of Social Services, et al., Respondents.

First Department, July 31, 1980

APPEARANCES OF COUNSEL

*Gloria Bletter* for petitioners.

*Maryellen Weinberg* of counsel (*Robert Abrams, Attorney-General,* attorney), for Barbara Blum, as Commissioner of the New York State Department of Social Services, respondent.

## OPINION OF THE COURT

SANDLER, J.

After an administrative fair hearing, the New York State Department of Social Services (Department) modified an order of the New York City Department of Social Services (Agency) to grant only in part reimbursement requested for expenses incurred in providing home care services for an elderly couple. In this CPLR article 78 proceeding, petitioners seek to annul the determination of the Department to the extent to which it denied in substantial part their application for reimbursement. In addition, petitioners seek a judgment declaring certain of respondents' actions to be unlawful.

Significant errors are disclosed by the record herein that mandate a new hearing. Although the record is inadequate to justify the formal declaration requested, there is no doubt that important questions are presented.

The record is incomplete in material respects with regard to the determination under review, a circumstance that by itself requires a new hearing. So far as the record before us goes, it discloses, at the time of the events with which we are concerned, a disturbing degree of confusion on the part of the Agency as to the requirements of the controlling law and regulations with regard to financial assistance for elderly persons who urgently require home care services. To a significant extent this confusion appears to have been shared by the Department. The nature of the confusion is pointed up by the fact that at different stages no less than three separate explanations for the determination were advanced, each inconsistent with the other, and none presenting a viable theory consistent with the law and the facts to support the result reached.

Central to the administrative approach taken by the Agency, and implicitly indorsed by the Department, is a failure to appreciate the obligation of the Agency affirmatively to assist applicants to understand and comply with the requirements of the law and regulations. (See 18 NYCRR 360.1; 45 CFR 206.10 [a] [1], [5].)

The original response of the Agency and the determination of the Department, and at least two of the three contradictory justifications of the Department's determination, depend on the unacceptable proposition that if someone acting on behalf of an elderly applicant fails in any respect to comply with the

requirements of the regulations, even though the failure is clearly attributable to the omission of Agency personnel aware of all the pertinent facts to give proper information and advice, the obligation to provide financial assistance may be delayed for significant periods of time.

Petitioners, residing in Queens, are an 88-year-old couple, whose extensive medical problems have required the services of full-time private homemakers and nurses since August, 1976. Aided partially by their children, they paid for these services from savings and Social Security payments until September of 1977 when their savings became depleted.

An application was then made to the Office of Case Intake and Management (OCIM) of the Agency for assistance. Their need for such assistance was verified by an OCIM caseworker who visited petitioners on September 24 and October 25, 1977. During the October 25 visit, presumably following the instructions of the OCIM caseworker, petitioners filled out a form application for medical assistance. Refusing to accept the application, the caseworker informed the petitioners that it had to be presented at the Manhattan offices of the Bureau of Medical Assistance (BMA).

Petitioners' health made it impossible for them to travel. According to testimony given at the fair hearing, petitioners' son accordingly visited the BMA with the application, as well as with relevant records, including bankbooks, a doctor's letter, and checks verifying payments for home attendant services since 1976. The fair hearing officer declined to credit the testimony of petitioners' son that he had furnished such documentation in a ruling that was clearly erroneous, as will become apparent hereafter, although a finding of such error is not critical on this appeal. In any event, the application was received.

Some weeks later, petitioners received a notice dated November 22, 1977, denying their application for two reasons. The first ground assigned was that their net monthly income, derived from Social Security payments, was $50 in excess of the eligibility requirement. This ruling was palpably erroneous since it ignored the fact known to representatives of the Agency at the time, and which was subsequently conceded to be undisputed by the hearing officer during the fair hearing, that the payments made by petitioners for over a year for home attendant services clearly established their income eligibility.

The second ground assigned was that some $16,750 withdrawn from their joint bank accounts with their children during the past year raised a presumption that the withdrawals were made to qualify for Medicaid. (18 NYCRR 360.8; Social Services Law, § 366, subd 1, par [e].) Although not argued on the appeal, the legal status of this presumption is to say the least very questionable.

In a Federal class action, the Circuit Court of Appeals recently sustained a preliminary injunction against the enforcement of this presumption, finding it to be in apparent conflict with the Social Security Act (US Code, tit 42, § 1396a, subd [a], par [10], cl [C], subcl [i]) (*Caldwell v Blum,* 621 F2d 491, stay den 446 US 1311; see, also, *Scarpuzza v Blum,* 73 AD2d 237). These authoritative decisions and the presently effective injunction, independently of other reasons, require a new hearing since the administrative action here challenged rests at least in part on the legality of that presumption.

On December 6, 1977, petitioners consulted with a staff attorney of Queens Legal Services for the Elderly. That attorney requested a fair hearing on December 7 and on December 12 wrote a letter to the BMA explaining that the withdrawals were in any event made more than a year prior to petitioners' application and therefore should not have been found effective to deny eligibility for medical assistance under 18 NYCRR 360.8. The accuracy of this information is unchallenged and there appears not the slightest doubt that the Agency would have known it on the date of the application if a request for an explanation had been made, assuming, indeed, that the Agency was not in fact in possession of the pertinent facts, as seems very likely.

There is not the slightest suggestion in this record that any additional financial records were ever submitted to the Agency after the date of the original application. Nevertheless, by notice dated December 23, 1977, petitioners were accepted for medical assistance under the surplus income Medicaid program. Mysteriously, petitioners were not found eligible for home care services until February 1, 1978. The reason for this delay in finding petitioners eligible for the precise relief that had prompted their original communication with the Agency is not clear in this record. There are obscure references to a formal application dated February 1, 1978,

although no copy of the application appears among the papers before us.

So far as can be determined, the delay in finding petitioners eligible for home care services occurred because the Agency rules required a separate application for such services distinct from the application for eligibility for medical assistance. Whether such an application was ever in fact submitted cannot be verified from this record. But in any event it is undisputed that the Agency knew from the moment of the original visit to petitioners' home on September 24, 1977 that the need was for financial assistance for home care services. If the application filled out on October 25, 1977 in the presence of the OCIM caseworker was incorrect, surely the responsibility for that error was that of the Agency. For the Agency to delay for four months a finding of eligibility for critically needed home care services for an incapacitated, aged couple because of an omission of its own personnel is wholly unacceptable.

Adding to this picture of administrative confusion is the obvious failure of the Agency to consider the right of the petitioners to retroactive payments under 18 NYCRR 360.16 (c) which explicitly provides: "An initial authorization shall be issued and made effective for inpatient and outpatient care and services provided a person during the three-month period preceding the month of application for medical assistance, if the applicant was eligible in the month in which such care or services were provided; but in no event shall an authorization be issued with respect to care or services provided prior thereto."

In the decision of the hearing officer, after the fair hearing, he found that the original application for medical assistance was made in October of 1977 and ultimately approved in December of 1977. With regard to the Agency's determination that eligibility for home care assistance was only established on February 1, 1978, the hearing officer correctly noted "that the Agency knew or should have known that appellant [one of the petitioners] was eligible for home attendant services when he applied, and that he had submitted medical data to support his request at that time." Having made a clearly proper finding which would then have required the officer to consider the eligibility of petitioners for retroactive payments prior to December, 1977, the officer inexplicably abandoned this correct conclusion to find that a formal application was made

effective February 1, 1978. He then proceeded to compute petitioners' eligibility for retroactive payments for three months on the basis of the February 1, 1978 approval, resulting in a modification of the original Agency determination only to the extent of directing reimbursement effective to December 1, 1977.

Turning to the contention that retroactivity should be considered with regard to the date of the original application in October of 1977, the officer noted the testimony of petitioners' son that "the explanation of utilization of bank savings was available in October when appellant applied, but that the Agency refused to consider the explanation until a later date, after which appellant was found to be eligible with surplus income. There is no evidence to support this contention." This finding is almost certainly erroneous.

No evidence was introduced to contradict the statement of petitioners' son. Nothing in the record suggests him to be anything other than a person of probity and a concerned son. Nor is there anything in his account of the response of the Agency interviewer when he submitted a mass of documentary papers that invites skepticism or distrust.

Moreover, it is apparent on the face of the record that some financial records were submitted because otherwise the Agency would not have known the fact of the withdrawals. It is not easy to believe that petitioners' son submitted papers sufficient to alert the Agency to the fact of the withdrawals but somehow failed to provide the data explaining them. Still further, petitioners' lawyer alleges, and there is no contradictory information in the record, that no further documentary evidence was ever submitted to the Agency following the initial rejection.

Finally, even if this factual finding of the hearing officer is accepted, his conclusion is still untenable. If the Agency received with the application information sufficient to alert them to the fact of withdrawals allegedly occurring within a year, it was the responsibility of the interviewer immediately to call the problem to the attention of the applicant so that appropriate documentation could be promptly made available. This responsibility was obviously never discharged.

Following the decision of the hearing officer petitioners' attorney wrote to the assistant counsel of the Department, who had cosigned the decision along with the respondent Blum, requesting clarification of contradictions and unsup-

ported findings in the decision. The counsel responded in a letter conceding that the application had been made in October of 1977, but going on to assert that petitioners had failed in their responsibilities under 18 NYCRR 360.1 "to provide to the Agency complete and accurate information necessary to make a proper eligibility determination." He went on to explain that the October application was "accepted as of February 1, 1978 after sufficient documentation had been submitted."

This "explanation" is unpersuasive. It implicitly accepts as correct the Agency determination that petitioners may properly be penalized for having failed originally to request in a separate application home care assistance even though that omission was undisputedly the primary fault of the caseworker who was fully aware of the circumstances and in whose presence the application was made.

As to the claimed failure to submit adequate information to the Agency with the original application, we need not repeat the factual analysis already presented. Suffice it to say, the assistant counsel in his explanation makes no reference to the obligation of the Agency, if presented with an application not accompanied by adequate information, promptly to inform the applicant of that which was required by the governing regulations. A delay of four months in responding to an application for home care services on behalf of a housebound 88-year-old couple cannot be sustained on the grounds assigned in this letter.

Finally, in the brief submitted on this appeal, respondent implicitly abandons the earlier explanations for the decision after the fair hearing and presents a new explanation. We are told that "petitioners overlook the fact that they were not financially eligible for assistance until December 1, 1977 when they had spent down all of the money withdrawn from their bank account."

Not one word in this record supports that statement. Neither of the grounds assigned in the original rejection of the October application by the Agency allege that petitioners' bank savings did not as of that time make them eligible for assistance. Contrary to respondent's further argument that petitioners had failed to establish such prior eligibility, although offering to show checks that would do so, the ground now assigned for the determination was not even an issue at the fair hearing, and nothing in the prior administrative

proceedings suggested that it would be an issue. The hearing officer made no such finding in his decision and it is palpable from a reading of the minutes of the fair hearing, as well as of the later decision, that he never considered it an issue. To the contrary, during the course of the hearing, he made clear his understanding that the payments for home attendant services which petitioners had been making for well over a year clearly and indisputably established eligibility.

For the foregoing reasons, the decision of the Department after a fair hearing dated May 19, 1978, insofar as it denies petitioner's application for reimbursement for Medicaid home attendant services, should be annulled, on the law, and the matter should be remanded for further proceedings in accordance with this opinion, without costs and without disbursements.

BIRNS, J. P., FEIN, MARKEWICH and CARRO, JJ., concur.

Determination of respondent State commissioner dated May 19, 1978 annulled, on the law, and the matter is remanded for further proceedings in accordance with the opinion of this court filed herein, without costs and without disbursements. Application on call of the calendar for permission to submit additional documents is granted.