■ IMOGENE ELLIS, by Her Guardian ad Litem, CHARLES ROBERT, Petitioner, v BARBARA BLUM, as Commissioner of the Department of Social Services of the State of New York, et al., Respondents. — The decision of respondent State Commissioner Blum, rendered December 21, 1979, affirming after hearing the determination of respondent New York City Commissioner Brezenoff, dated April 2, 1979, denying petitioner's eligibility for medical assistance, is unanimously annulled without costs and the petition is granted to the extent of remanding the proceeding to the commissioner with a direction to take appropriate action to provide medical assistance for petitioner's expenses at East Haven Health Related Facility. This article 78 proceeding was transferred to this court, pursuant to CPLR 7804 (subd [g]), by order of Supreme Court, Bronx County, dated September 15, 1980. Petitioner was denied medical assistance because she had voluntarily transferred assets for the purpose of qualifying for such assistance, in violation of section 366 (subd 1, par [e]) of the Social Services Law. That law not only prohibits medical assistance benefits to

those who have voluntarily transferred assets for the purpose of qualifying, but also presumptively considers transfers of assets within 18 months prior to the date of application for medical assistance to have been made for the purpose of so qualifying. Petitioner had a bank account in trust for her son. Between August, 1977, when the balance stood at $32,947.89, and March, 1979, when the balance read $1,612.50, the account was increased by monthly Social Security deposits and quarterly dividends, and decreased by periodic withdrawals varying from $151 to $770, with two major exceptions. On August 1, 1977 there was a withdrawal of $25,000, and on December 28, 1978 there was a further withdrawal of $7,230. These withdrawals were concededly transacted by petitioner's son after she had signed the withdrawal slips, and he then used these funds for his own benefit, the $25,000 toward payment on a house, and the $7,230 toward payment on a new car. Whatever remedies may be available against the son are not relevant to the issues now here. Petitioner was admitted to Harlem Hospital on December 24, 1978, at which time application for medical assistance was made. She was removed to the East Haven Health Related Facility in March, 1979. The two transfers in question, totaling $32,230, were indisputably made within 18 months of the application for medical assistance. The 18-month presumption provision replaced an earlier 12-month provision on August 23, 1978 (L 1978, ch 612). While both transfers of assets were made within 18 months of the application, only the second transfer was within 12 months. The first transfer was made at a time when the 12-month presumption was in effect. However, it must have been the intention of the Legislature that the law in effect at the time of the application for medical assistance governs, rather than that at the time of the actual transfer of assets. There is an absence of substantial evidence that the two transfers in question were made for the purpose of qualifying for medical assistance. Petitioner's son testified at the hearing that although the bulk of the money in the trust account represented earnings by his parents, that money was always intended for him, based on conversations he had had with his parents through the years. Petitioner's son conceded that his mother knew what she was doing when she signed the withdrawal slips, but insisted that her intention had always been that this money would go to her only child. Petitioner confirmed this in her own testimony. Under these circumstances, respondents were forced to rely upon the presumption in the statute that the transfers were made for the purpose of qualifying for medical assistance. The statutory presumption that the transfer was for the purpose of qualifying for medical assistance as a basis for denying benefits to an individual otherwise eligible for benefits under the Federal Supplemental Security Income program has been declared inconsistent with, and therefore to contravene the applicable provisions of the Federal Social Security Act as amended (US Code, tit 42, § 1396, subd [a], par [10]; *Matter of Scarpuzza v Blum,* 73 AD2d 237, appeal withdrawn 53 NY2d 704; *Caldwell v Blum,* 621 F2d 491, cert den __ US __). In *Caldwell,* sustaining a temporary injunction against enforcement of the statutory presumption, the Second Circuit noted unsuccessful attempts in Congress to authorize States to adopt transfer-of-assets prohibitions against those seeking to qualify for medical assistance (621 F2d, at pp 497-498). Respondent commissioner now concedes that by virtue of the *Caldwell* injunction, granted in a class action, enforcement of the transfer of assets statute (Social Services Law, § 366, subd 1, par [e]) is barred. The commissioner has agreed that Medicaid is to be afforded petitioner on the basis of the *Caldwell* injunction. On the record before us it has not been established that the transfers here were motivated by a fraudulent intent to qualify for medical assistance. Respondents' total reliance upon the statutory presumption was plainly misplaced. Petitioner seeks attorney's fees under the Civil Rights

Attorney's Fee Award Act (US Code, tit 42, § 1988), available where an action is brought to redress a civil rights grievance under section 1983 of title 42 of the United States Code. However, such fees are discretionary. They are not available where the litigation was unnecessary. While it is true that the only way to challenge the adverse administrative determinations was by way of article 78 proceeding, resort to that remedy was unnecessary here. The preliminary injunction of the United States District Court for the Northern District of New York *(Caldwell v Blum,* 621 F2d 491, *supra),* a class action, restraining enforcement of section 366 (subd 1, par [e]) of the Social Services Law, was issued by Judge Munson on December 3, 1979. The Second Circuit affirmed that decision on April 16, 1980. Rather than seeking to renew her application for medical assistance in light of those judicial developments, petitioner commenced this article 78 proceeding in Bronx Supreme Court just five days later, by show cause order dated April 21, 1980. Subsequent events confirmed the possibility that petitioner might have gained relief without pursuing litigation. On May 6, 1980, in connection with respondent Blum's petition for writ of certiorari in the United States Supreme Court (since denied, *supra),* Justice Marshall denied a stay of Judge Munson's preliminary injunction (446 US 1311). This was fully three weeks before the return day of petitioner's show cause order in Special Term (May 27). A similar motion for a stay, addressed to the entire Supreme Court, was denied on June 2, 1980 (446 US 980). The Supreme Court's refusal to stay Judge Munson's preliminary injunction against enforcement of the New York statute certainly should have been known to petitioner's counsel by September 15, 1980, the date of Special Term's order of transfer to this court. We do not overlook the fact that petitioner is an octogenarian who is not in the best of health, but it seems clear that some administrative attempts at resolving petitioner's situation could have been made in light of the Federal litigation before pursuing the instant proceeding all the way to this court. Award of counsel fees is thus unwarranted. Concur — Sandler, J. P., Ross, Carro, Markewich and Fein, JJ.