In the Matter of Rose Desmone, Petitioner, v Barbara Blum, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Second Department, February 21, 1984

APPEARANCES OF COUNSEL

*Bryant & Morey* (*Kenneth G. Rothstein* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Maryellen Weinberg* and *Shirley Bedor Ortego* of counsel), for Barbara Blum, as Commissioner of the New York State Department of Social Services, respondent.

OPINION OF THE COURT

O'CONNOR, J.

Petitioner was a recipient of medical assistance (US Code, tit 42, § 1396 *et seq.;* Social Services Law, § 363 *et seq.*) from January 1, 1973 until February 26, 1979, at which point the local social services agency terminated benefits because she and her daughter Eleanor had conveyed their joint interests in their residence to petitioner's daughter Linda in violation of the eligibility requirement of former paragraph (e) of subdivision 1 of section 366 of the Social Services Law. That provision excluded from assistance any applicant who had made a voluntary assignment or transfer of property for the purpose of qualifying for such assistance. The provision created a presumption of invalid transfer if the transfer occurred within a specified period from the date of the application, and deemed the transfer to be invalid if made for less than reasonable consideration or if made without agency ap-

proval subsequent to the application or a determination of eligibility.[1]

Specifically, a February 26, 1979 determination by the State commissioner, after a statutory fair hearing, found that, under a May 4, 1978 contract, as amended by an instrument of August 3, 1978, Eleanor conveyed her interest in the residence to her sister Linda for $28,000, and petitioner conveyed her interest in that residence (reserving a life estate) in exchange for Linda's promise to "render * * * aid, support and maintenance and to provide for her [petitioner's] general welfare for the duration of her natural life". The State commissioner ruled that petitioner violated the requirements of 18 NYCRR 360.1 (e) (6) by failing to notify the local agency of this change of circumstances, and also violated the former statutory requirement, by transferring the property after an eligibility determination but without prior agency approval. She found that petitioner resided with Linda and Linda's family in such a manner as to come within the regulatory definition of a household (18 NYCRR 360.23 [g]), and ruled that under 18 NYCRR 360.25 the resources and income of all household members must be listed in a single application. She found that petitioner had failed to overcome the statutory presumption against transfers in that the value of her half interest in the home was substantial (measured by the $28,000 consideration for Eleanor's half interest), the life estate was of no demonstrable value (given petitioner's ill health and the fact that Linda and her family shared possession of the residence with her), and the promise of support was of insubstantial value (in light of petitioner's age and a failure to show that petitioner lacked income to meet her own needs). "In any event," ruled the commissioner, "the appellant [petitioner] is no longer in need of medical assistance since her daughter, Linda, has assumed the obligation to provide all support and maintenance for her. Under the contract, the appellant cannot now have any medical needs to be met under the medical assistance program".

Instead of seeking judicial review of this adverse determination, petitioner waited and then made a second appli-

---

1. Former paragraph (e) of subdivision 1 of section 366 of the Social Services Law was repealed by section 4 of chapter 56 of the Laws of 1982, effective April 12, 1982.

cation in August, 1980, which the local agency denied on the ground that she was the beneficiary of Linda's promise of support, and therefore, as previously determined, had no unmet needs.

At the fair hearing conducted on November 6, 1980, Linda testified that petitioner had made the second application because the family feared future contingencies, although petitioner had no medical expenses that could not be met by her at the present time. According to Linda, petitioner was in her seventies, and suffered from senility, diabetes and other medical problems. Petitioner did not testify; it was the position of her representative and of Linda that they were entitled to prove that Linda's undertaking to care for petitioner had not been meant to include petitioner's medical expenses. The hearing officer ruled that petitioner's living arrangement with Linda and her family was not in issue, but that he would create a record for the State commissioner on the issue of what the undertaking had included. The agency's representative argued that the agency's decision had been based on the findings of fact and conclusions in the State commissioner's original determination respecting the support promise, and stated that as a result no attempt had been made to investigate the performance or nonperformance of the parties to the agreement nor the issue of petitioner's income nor other facts relevant to her eligibility. The hearing officer stated that a re-examination might be in order because subsequent to the original determination the Second Circuit handed down its decision in *Caldwell v Blum* (621 F2d 491), citing this court's decision in *Matter of Scarpuzza v Blum* (73 AD2d 237), which invalidated the State's prohibition against voluntary transfers of property for purposes of qualifying for medical assistance.

Linda testified that she had never discussed the issue of medical expenses with petitioner and that she had never intended to pay for such costs. Linda stated that at the time she could not have afforded to pay petitioner's medical expenses and that petitioner was then receiving medical assistance. Furthermore, she testified that she had not paid any of petitioner's medical bills and had no intention of ever doing so.

Linda also testified concerning the parties' living arrangements. Petitioner resided with Eleanor separately from Linda and Linda's husband and two daughters. Linda's husband, a contractor, built an apartment in the basement for petitioner and Eleanor, consisting of a living room, dining room, kitchenette, bathroom, heating system and separate entrances and exits. Since petitioner could not be left alone, Linda managed her medical (insulin) and dietary regimens, including the purchase and preparation of petitioner's meals, which were served petitioner in her apartment. Eleanor was independent and was not charged rent for residing in the apartment because her loan to Linda had, at least in part, financed the apartment's construction.

Linda admitted that she had not said much at the fair hearing which preceded the State commissioner's original determination. Her attorney "did most of the talking". He was the lawyer who had handled the real estate transaction for her with the assurance that it would not adversely affect petitioner's medical assistance eligibility. It was her position that whatever had been decided by the State commissioner in her first determination was rendered moot by the *Caldwell* decision (*Caldwell v Blum, supra*).

The State commissioner, however, in the determination under review, affirmed the denial of the second application for assistance. The new determination recited that petitioner resided in the same premises as Eleanor, Linda and Linda's family, noted that the prior determination had found petitioner ineligible because of Linda's support promise, and found as a fact that Linda was supporting petitioner pursuant to the agreement. Because Linda had undertaken the support of petitioner, and therefore created a household for determining sources of income and resources in determining eligibility, the commissioner concluded that no determination of eligibility could be made in the absence of an application completed not only by petitioner but also by other members of the household as thus defined.

By petition dated March 25, 1981, the petitioner sought review of this determination and an order directing respondents to pay her medical assistance on the ground that

Linda's promise did not include medical expenses, that Linda had breached any obligation to pay medical expenses, and that petitioner's right to prior notice of the grounds for the determination was violated by basing it upon petitioner's failure to include other members of her alleged household in her application.

Special Term (MURPHY, J.), by order dated November 4, 1981 denied respondents' motion to dismiss on the ground that the four-month limitation period had run out because no review had ever been sought until after the State commissioner's second determination, which was nothing more than a denial of reconsideration of the original determination. Special Term reasoned that the issues were different in the two determinations, in that the original determination was limited to the question of the effect of petitioner's property transfer while the second determination resolved the question of the parties' intent with respect to the promise of support. The court also ruled that the presumption relied on in the first determination had been stricken by the *Caldwell (supra)* decision, and that petitioner had not been given notice that the determination would resolve the issue of whether all members of her purported household had to complete the application for medical assistance. Respondents thereupon put in their answers to the petition, and the matter was transferred to this court by order of Special Term (BALLETTA, J.), dated December 15, 1981, to determine if the determination was supported by substantial evidence (CPLR 7804, subd [g]). The answers of the respondents take the position that the issues of the validity of the transfer and the effect of the promise of support vis-à-vis medical expenses had been finally decided in the commissioner's original determination, and that the challenged determination's reference to the need for a household application rather than an individual application merely stated the necessary legal consequence flowing from the existence of the support promise.

■■ At the outset, we must take note of Special Term's conclusions as to the timely filing of petitioner's second application. Notwithstanding that court's intimation to the contrary, it is apparent from the face of the determination under review that the State commissioner either refused to

reconsider the issue of the nature of the promise of support, or upon reconsideration adhered to her prior determination, which on its face *did* resolve the issues adversely to petitioner on grounds *additional* to the issue of the propriety of the transfer of the property. Inasmuch as we cannot determine on this record whether the commissioner denied reconsideration or adhered to her prior determination (except with respect to the statutory prohibition against transfers of assets for less than equivalent consideration), we agree with Special Term's denial of respondents' application to dismiss the proceeding as time barred. Nevertheless, we cannot agree with its reasoning that the initial determination resolved only the issue, now moot, of whether the transfer of petitioner's residence violated the statutory prohibition, and we are not bound by this conclusion.

It is true that in *Matter of Parrotta v Board of Educ.* (60 AD2d 858, mot for lv to app den 44 NY2d 649) we expressly declared that a nonfinal order made by Special Term in an article 78 proceeding is not reviewable despite a CPLR 7804 (subd [g]) transfer to this court unless the petitioner takes an appeal from the order by filing a notice of appeal — which this petitioner indisputably never did.

■ Nevertheless, it must be noted that nonfinal orders in proceedings pursuant to CPLR article 78 are not reviewable apart from a judgment except by permission (CPLR 5701, subd [c]), and the appeal is taken by entry of the order granting permission, not by filing a notice of appeal (CPLR 5515, subd [1]). Although the CPLR does not expressly so state, absent permission of this court or of Special Term, no "appeal" from the order would arguably lie until this court had directed judgment after resolution of the substantial evidence issue.[2] Furthermore, CPLR 7804 (subd [g]) expressly provides that: "When the proceeding comes before it, whether by appeal or transfer, the

2. Indeed, this court (by a single Justice) has been empowered to grant such permission only since enactment of the CPLR; the predecessor section of the Civil Practice Act (§ 1304) permitted appeals from intermediate orders only in conjunction with an appeal from the final order (now judgment) in the absence of a direction to the contrary by the issuing court. The extension of such discretionary authority to Justices of the Appellate Division was generally meant to liberalize appeals — not to dispose of the instant problem (see Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 7B, CPLR 5701, p 582; Advisory Committee Notes, NY Cons Laws Serv, Book 4K, CPLR 5701, p 180).

appellate division shall dispose of all issues in the proceeding". In opposing repeal of this subdivision so as to entrust Special Term with review of all issues in these proceedings, the Advisory Committee on Civil Practice in its most recent report noted that the substantial evidence issue: "is an adjunct of the old writ of certiorari, which applied only when it was sought to review a determination following a full-fledged 'quasi-judicial' hearing (what the State Administrative Procedure Act denominates an 'adjudicatory proceeding'), and since this phase of Article 78 carries forth that function, the procedure of leaving initial judicial review of the substantial evidence question to the Appellate Division should be retained. The premise underlying this procedure is that there has already been a plenary hearing before the agency, giving rise to a full record, and that a 'substantial evidence' review of that record should go only to an appellate-level court" (1982 Report of the Advisory Committee on Civil Practice to Chief Administrator of Courts of the State of New York, Fourth Ann Report of Chief Administrator of Courts, pp 157-158).

In short, this court acts in its *appellate* capacity with respect to both judicial orders and posthearing agency determinations; therefore, it would be absurd to bifurcate the appellate issues of substantial evidence from all other issues, and to reserve decision on the latter until after judgment simply because nisi prius had passed on those issues and permission to appeal such orders separately had not been obtained. A party seeking review of the substantial evidence issues by commencing a proceeding pursuant to CPLR article 78 is, in effect, taking an appeal; therefore, any nonfinal orders made prior to the order transferring the matter to the Appellate Division are brought up to this court as well. We may review any previously unreviewed nonfinal order which necessarily affects a final judgment or order being appealed — or reviewed (cf. *Matter of Board of Educ. v Ambach,* 84 AD2d 55, 57) — and we find no basis in law for requiring the party aggrieved by the substantial evidence question to file a notice of appeal from any nonfinal orders by which the party is also aggrieved. To the extent that *Matter of Parrotta v Board of Educ. (supra)* holds to the contrary, it is overruled.

■ Turning to the merits, we would sustain the commissioner either in her discretionary refusal to reconsider the issue of the nature of the promise of support or in her determination of the issue, which on its face did not resolve it adversely to petitioner based on the new evidence taken at the second fair hearing. We do so because petitioner, who was represented throughout by counsel, never sought judicial review of the commissioner's original express finding regarding the support promise, and because the evidence at this second hearing was limited to Linda's testimony (on petitioner's behalf) regarding the understanding of but one party to the contract — Linda herself. The commissioner was free to accept or reject an inference that the parties' failure to discuss medical expenses in relation to the unqualified language of the promise, at a time when petitioner was a recipient of medical assistance, demonstrated that petitioner shared Linda's understanding.

In effect, petitioner framed the issue before us as an erroneous finding of fact made by the commissioner on reconsideration. What the record discloses, however, is that petitioner is caught in the web woven by the parties (and aided by counsel) in their attempt to extricate the family from the former statutory prohibition against transfers of assets for less than fair consideration. The issue at the first fair hearing was whether the support promise was equivalent in value to petitioner's interest in her house; the State commissioner, though including medical expenses in the language of the promise, nevertheless found that the promise was not equivalent. Now, of course, the statutory prohibition that induced the parties to engage in this transaction has, contrary to their original assumption, been found invalid. Unfortunately, their contract has continuing vitality independent of the invalid statute that motivated them to enter it. Rather than mount a futile challenge to the validity of the contract, petitioner took the position on reapplication that her daughter's support promise was worth even less than the commissioner had found it to be earlier, in that the promise had not been intended to include medical expenses. The issue, therefore, was one of credibility.

Under the circumstances, and given evidence of only one party's peculiarly limited interpretation of the plain, broad

language of the support promise, we cannot say that the commissioner's determination was either arbitrary or unsupported by substantial evidence.

We further rule that the commissioner's conclusion framed in terms of petitioner's failure to file an application containing information respecting other members of her household, was also supported by the record and was not a surprise. Here, too, the determination under review merely adhered to the prior determination, which had expressly found that petitioner had failed to inform the agency of the household situation created by Linda's undertaking of her support. Under the circumstances we perceive no grounds for ruling that the commissioner abused her discretion in either denying reconsideration of this issue or in adhering to her prior resolution of the issue.

The determination, therefore, must be confirmed.

GIBBONS, J. P., WEINSTEIN and BROWN, JJ., concur.

Determination of the State Commissioner of Social Services dated November 28, 1980 confirmed and proceeding dismissed on the merits, without costs or disbursements.