In the Matter of HERMAN RINEFIERD, JR., Petitioner, v BAR-
BARA BLUM, as Acting Commissioner of the New York
State Department of Social Services, et al., Respondents.

Fourth Department, January 19, 1979

*Frank Clark* for appellant.

*Louis J. Lefkowitz, Attorney-General (Anne S. Meadvin, Alan W. Rubenstein* and *Sidney L. Grossman* of counsel), for Barbara Blum, respondent.

*James H. Hughes (John A. Barnaba* of counsel), for John L. Lascaris, respondent.

**OPINION OF THE COURT**

CARDAMONE, J.

On December 8, 1975 Herman Rinefierd entered a nursing home at age 85. Nine months later he sold his home and in October, 1976 distributed the nearly $20,000 to his five sons. A year later his son, Herman Rinefierd, Jr., the petitioner, applied for medical assistance on behalf of his then 87-year-old father. The local agency denied the application on the ground that the senior Rinefierd had transferred assets at a time when he had a medical need in order to qualify for medical assistance. A fair hearing was held and the acting State commissioner affirmed the local agency's determination. This CPLR article 78 proceeding followed in which petitioner urges that there is no evidence that the transfer was made in order to qualify for medical assistance and that section 366 (subd 1, par [e]) of the Social Services Law violates the supremacy clause and is, therefore, unconstitutional. We confirm the determination for the reasons which follow.

At the time when the application for assistance was made section 366 (subd 1, par [e]) of the Social Services Law stated that medical assistance shall be given to a person requiring it and who "has not made a voluntary transfer of property (i) for the purpose of qualifying for such assistance * * * A transfer of property made within one year prior to the date of application shall be presumed to have been made for the purpose specified in subparagraph (i)". (L 1977, ch 755, § 1.)

In order to deny medical assistance there had to be proof

that the senior Rinefierd had transferred his property for the purpose of qualifying for medical assistance. The then statutory one-year presumption (now 18 months, L 1978, ch 612, § 1) may not be relied upon in this case because there is no proof to show that the transfer was made less than one year prior to the application for assistance. However, there is sufficient proof, without the presumption, that the transfer was made for the purpose of qualifying for assistance. At the time when the senior Rinefierd sold his home and distributed the proceeds he had an established medical need demonstrated by the fact that at age 86 he had already spent the preceding 9 or 10 months in a nursing home. Nothing in the record suggests that there was any hope of his leaving the nursing home where, by the time of the fair hearing, his monthly expenses had escalated to $2,000. We are satisfied that the commissioner's determination that these assets were transferred in order to qualify for medical assistance finds sufficient support in the record *(Matter of McManus v D'Elia,* 66 AD2d 783). We need spend no more time on this issue since petitioner's counsel states in a December 9, 1978 letter directed to this court that petitioner does not question the substantiality of the evidence relied upon by respondents in denying his application.

We turn to petitioner's argument that section 366 (subd 1, par [e]) of the Social Services Law violates Federal law. It is his contention that eligibility to participate in the New York State Medical Assistance Plan must be determined by Federal standards and that, since the New York transfer of property statute allows the local agency to consider assets no longer actually available to the applicant, it is not consistent with the less stringent Federal standards.

Were section 366 (subd 1, par [e]) to conflict with the Federal Social Security Act (US Code, tit 42, § 1396 *et seq.)* and the regulations promulgated thereunder, it would violate the supremacy clause of the United States Constitution (US Const, art VI, cl 2). To the extent that the State statute and regulations conflict with the Social Security Act and regulations thereunder, the former must yield to the latter *(Townsend v Swank,* 404 US 282, 286; *Aitchison v Berger,* 404 F Supp 1137, affd 538 F2d 307, cert den 429 US 890; *Owens v Roberts,* 377 F Supp 45, 55; *Longey v Philbrook,* 438 F Supp 264, 267; see, also, *Schaak v Schmidt,* 344 F Supp 99, 103; *Wilczynski v Harder,* 323 F Supp 509; *Matter of Boines v*

*Lavine,* 44 AD2d 765, 766, lv to app den 34 NY2d 519, app dsmd 419 US 1040).

The New York State Medical Assistance Plan is partially funded by Federal grants awarded under title XIX of the Social Security Act (US Code, tit 42, § 1396 *et seq.).* Eligibility to participate in the State medical assistance program is governed by Federal statutes and regulations. In order to qualify for Federal funds a State plan must "include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and * * * as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance or benefits" (US Code, tit 42, § 1396a; subd [a], par [17]). The secretary's rules and regulations concerning conditions of eligibility for medical assistance are promulgated under the authority of section 1302 of title 42 of the United States Code. The rules clearly provide that only those resources actually available to an applicant are to be considered in determining eligibility (42 CFR, Part 435, formerly Part 448; see, also, *Matter of Dumbleton v Reed,* 40 NY2d 586, 588).

It is settled law that State transfer of assets statutes which assume assets are available to recipients when, in fact, such assets are not available violate the supremacy clause *(Buckner v Maher,* 424 F Supp 366, affd 434 US 898; *Matter of Shook v Lavine,* 49 AD2d 238). Other States' transfer of property statutes have been struck down by Federal courts *(Udina v Walsh,* 440 F Supp 1151; *Buckner v Maher, supra; Owens v Roberts,* 377 F Supp 45, *supra).* Unlike the New York statute, however, those statutes disqualified an applicant solely because of a transfer. Section 366 (subd 1, par [e]) of the Social Services Law denies assistance *only* where the transfer is made for the purpose of qualifying for medical assistance.

Section 366 plainly is designed to prevent those transfers of funds or property which may be characterized as sham or spurious or made with fraudulent intent in order for an applicant to claim eligibility. Thus, we consider a transfer or property made in order to qualify an applicant for medical assistance to be a species of fraud. Implicit here in the later-filed application for benefits is the misrepresentation as to the

applicant's finances contained in the statement that there exist no available resources. Since immediately prior to the time of transfer assets were available, the fact of transfer coupled with an intent later to file for benefits constitutes a species of misrepresentation or fraud undertaken for the applicant's benefit at the expense of the public fisc. An applicant who has made a transfer of funds or property is eligible for benefits where the transfer is shown, for example, to be for value or to repay an antecedent debt *(Matter of Anson v Kitchin,* 64 AD2d 752, 753; *Matter of Gardner v Lavine,* 56 AD2d 930; *Sweeney v D'Elia,* 49 AD2d 593). In this case the proceeds derived from the sale of the home were not spent on the father's behalf for nursing home or medical expenses.

There is little doubt that New York State has a legitimate interest in policing this kind of practice. A State statute that denies benefits to applicants who have utilized what fairly may be termed fraudulent measures to qualify for assistance is not unconstitutional *(Lavine v Milne,* 424 US 577). In *New York Dept. of Social Servs. v Dublino* (413 US 405, 413) the Supreme Court wrote that the courts should not lightly interfere with attempts "to assure that limited state welfare funds be spent on behalf of those genuinely incapacitated and most in need, and to cope with the fiscal hardships enveloping many state and local governments * * * The problems confronting our society in these areas are severe, and state governments, in cooperation with the Federal Government, must be allowed considerable latitude in attempting their resolution."

We do not believe that section 366 (subd 1, par [e]) of the Social Services Law conflicts with the Federal statute and regulations. It does not prevent petitioner from demonstrating that the transfer was not made for the purpose of qualifying for assistance. To hold otherwise would permit broad abuse of the medical assistance program by granting eligiblity to those applicants who simply sell, give away, transfer or assign all their property. A statute invalidating such a transfer made for less than fair consideration has been upheld by the highest court of a sister State *(Lerner v Department of Health & Social Servs.,* 70 Wis 2d 670).

Unlike the Connecticut statute invalidated in *Buckner v Maher* (424 F Supp 366, *supra),* the New York and Wisconsin statutes deny or diminish assistance only to applicants who have utilized what fairly may be regarded as fraudulent

schemes in order to qualify for benefits. Such antifraud measures were implicitly sanctioned by the Supreme Court in *Lavine v Milne* (424 US 577, *supra*). Absent a clear and binding holding to the contrary, we believe that a statute like section 366 (subd 1, par [e]) of the Social Services Law which is narrowly drawn and confined to applicants who have transferred their assets specifically for the purpose of qualifying for public benefits should be upheld *(Matter of Gardner v Lavine, 56 AD2d 930, supra)*.

Finally, we are persuaded to the view we take because we cannot believe that a result sanctioning the result urged by petitioner could have been contemplated by Congress when it enacted title XIX, nor by the HEW when it promulgated the regulations following it. In order to invoke the supremacy clause a clear manifestation of congressional intent must be shown. " 'It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed' " *(New York Dept. of Social Servs. v Dublino,* 413 US 405, 413, *supra).*

The determination should be confirmed.

Moule, J. P., Simons, Dillon and Hancock, Jr., JJ., concur.

Determination unanimously confirmed without costs and petition dismissed.