Rossye **DAWSON, Individually and on behalf of all others similarly situated,** Plaintiff-Appellant,

v.

**Beverlee A. MYERS * et al.,** Defendants-Appellees.

**No. 79-3246.**

United States Court of Appeals, Ninth Circuit.

May 14, 1980.

Rehearing Denied July 30, 1980.

---

* Beverlee A. Myers, the Director of the California State Department of Health Services, is the successor to Edwin W. Beach, the originally named defendant. Since Myers succeeded Beach prior to when this appeal was taken, we make the substitution under Fed.R.Civ.P. 25(d)(1) rather than Fed.R.App.P. 43(c)(1).

Gill DeFord, Los Angeles, Cal., for plaintiff-appellant.

Richard Magasin, Los Angeles, Cal., argued, for defendants-appellees; George Deukmejian, Atty. Gen., Los Angeles, Cal., on brief.

Before WRIGHT and ANDERSON, Circuit Judges, and SOLOMON,** District Judge.

J. BLAINE ANDERSON, Circuit Judge:

This is a class action challenging the State of California's transfer of assets rule which was relied upon to deny Medi-Cal benefits to members of the class. In short, this rule denies Medi-Cal benefits to any individual who has transferred assets so as to qualify under the financial eligibility requirements for Medi-Cal. The class members argue that the transfer rule conflicts with the federal Medicaid statutes and regulations, and they also challenge the rule's constitutionality based on due process and equal protection grounds. The court below rejected all of these arguments and upheld

** The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

the transfer rule. We believe that the district court reached the correct result and affirm.

## I. BACKGROUND

### A. Medicaid

Title XIX of the Social Security Act established the Medicaid program. 42 U.S.C. § 1396 et seq. This cooperative federal-state program is designed to provide medical assistance to certain classes of individuals who are in need of such assistance. Although states are not required to participate, if they choose to do so they must develop a plan which conforms to the federal guidelines. 42 U.S.C. § 1396a(b). Despite the extensive federal standards (42 U.S.C. § 1396a), the individual states are given wide discretion in the administration of their local programs. Norman v. St. Clair, 610 F.2d 1228, 1230 (5th Cir. 1980). After a state's plan is approved by the Secretary of Health, Education and Welfare, the state then receives reimbursement for a portion of the funds which are expended. 42 U.S.C. § 1396.

A state which has chosen to adopt a Medicaid program has the option of deciding whether it should provide benefits to only one or to both of the statutorily-defined groups of needy persons. States participating in the program must provide assistance to the group which is referred to as the categorically needy.[1] 42 U.S.C. § 1396a (a)(10)(A). Generally, in order to be considered categorically needy, an individual must be receiving financial assistance, or

be financially eligible for such assistance, under Title IV–A of the Social Security Act (Aid to Families with Dependent Children, referred to as AFDC) or Title XVI of the Social Security Act (Supplemental Security Income for the Aged, Blind, and Disabled, referred to as SSI).[2]

When they establish their Medicaid program, the states have the option of also providing benefits to the group which is referred to as the medically needy. This group covers individuals who would qualify for AFDC or SSI except that they have sufficient income and resources to cover the essentials aside from their medical costs.[3] The medically needy begin receiving assistance after they have incurred medical expenses which reduce their income (and assets) below a prescribed level. Thus, the chief distinction between the two groups is that the categorically needy have lower incomes and less resources than the medically needy.

### B. Medi-Cal

California, through its Medi-Cal program, has voluntarily chosen to participate in the Medicaid program. In addition, California voluntarily chose to cover the medically needy as well as the categorically needy. California has adopted a comprehensive statutory and regulatory scheme to implement its Medi-Cal program.

As part of its plan, the California legislature adopted what is called a transfer of assets rule. Cal. (Welf. & Inst.) Code § 14015.[4] Basically, this prevents persons

---

1. The regulations define this group as follows:
 "Categorically needy" means aged, blind or disabled individuals or families and children who are otherwise eligible for medicaid and who meet the financial eligibility requirements for AFDC, SSI, or an optional State supplement;"
 42 C.F.R. § 435.4.

2. States have the option of using more restrictive criteria than those used under the AFDC or SSI programs. California has not chosen this option and so this opinion does not deal with

those provisions of the Medicaid Act which would then come into play.

3. The regulations define this group as follows:
 "Medically needy" means aged, blind, or disabled individuals or families and children who are otherwise eligible for medicaid and whose income and resources are above the limits set under the medicaid State plan;"
 42 C.F.R. § 435.4.

4. The statutory part of the transfer rule provides as follows:
 "The providing of health care under this chapter shall not impose any limitation or

from qualifying as *medically needy* if they have transferred assets for less than fair consideration within two years prior to their application for assistance. The transfer rule only applies to applicants in the *medically needy* group; it has no application at all to the *categorically needy*.

California has promulgated regulations which, among other things, establish eligibility requirements for the *medically needy* and implement the transfer rule.[5] Under these regulations, an individual is eligible as *medically needy* only if his or her assets are valued at $1500 or less. 22 Cal.Admin.Code § 50420. An individual's home, income-producing real property, and certain other assets are not counted toward the $1500 limitation. 22 Cal.Admin.Code §§ 50418, 50425–50489. Although this property is exempt insofar as determining eligibility, it remains potentially subject to California's recovery procedures. That is, after the individual dies, California is entitled to recover the cost of medical assistance it provided to the individual from the assets (including both exempt and nonexempt property) which are left in the individual's estate.

Under the regulations which implement the transfer rule, any transfer of assets (including exempt property) for less than adequate consideration creates a rebuttable presumption that the transfer was made for the purpose of establishing eligibility. Unless the applicant rebuts the presumption, the state can deny benefits on this basis.

### C. *Facts*

Dawson, who originally filed this action, has died. Two other individuals, Beltran and Manahan, intervened. Beltran, who is 87, lives in an extended care facility. Manahan, who is 85, lives in a convalescent home. Both Beltran and Manahan were *medically needy* and otherwise qualified to receive Medi-Cal benefits. However, both

restriction upon the person's right to sell, exchange or change the form of property holdings nor shall the care provided constitute any encumbrance on the holdings. However, any transfer of the holdings by gift or, knowingly, without adequate and reasonable consideration, shall be presumed to constitute a gift of property with intent to qualify for assistance and such act shall disqualify the owner for further aid for a period determined under standards established by the director, and in no event for less than half of the period that the capital value of the transferred property would have supplied the person's maintenance needs based on his circumstances at the time of his transfer plus the cost of any needed medical care."
Cal. (Welf. & Inst.) Code § 14015.

**5.** The transfer rule is implemented, for the most part, through 22 *Cal.Admin.Code* §§ 50408, 50409. The first section (§ 50408) states the general conditions for when the transfer of property will not result in ineligibility. The rule and the procedure for overcoming the presumption are then stated in § 50409:

"(a) Transfer of property shall result in ineligibility for Medi-Cal if the transfer did not meet at least one of the conditions specified in Section 50408 or the transfer was in return for an enforceable life care contract which includes complete medical care.

"(b) Transfer of property without adequate consideration shall result in ineligibility for Medi-Cal if the transfer was made to establish eligibility or to reduce the share of cost.

"(1) It shall be presumed that property transferred without adequate consideration was for the purpose of establishing eligibility or to reduce the share of cost as limited by (2).

"(2) To overcome the presumption, the applicant or beneficiary has the burden of establishing by objective facts, rather than statement of subjective intent, that this presumption is not correct. The applicant or beneficiary shall provide evidence that adequate resources were available at the time of the transfer of property for support and medical care considering such things as the applicant's or beneficiary's age, health, life expectancy, and ability to understand extent of resources.

"(A) The declaration of another purpose, such as to avoid probate, by itself, shall not be sufficient to overcome the presumption. A showing that the sole purpose of the transfer was for reasons other than to establish eligibility or to reduce the share of cost shall be supported by evidence such as that specified above.

"(B) The establishment of the fact that the applicant or beneficiary did not have specific knowledge of the availability or benefits of the Medi-Cal program is not sufficient to overcome the presumption."

were denied benefits based on the fact that they had transferred assets for less than adequate consideration prior to applying for Medi-Cal. Neither was able to overcome the presumption of ineligibility resulting from these transfers.

In their complaint, Beltran and Manahan (referred to as appellants), on behalf of themselves and others similarly situated, sought declaratory and injunctive relief invalidating and enjoining the California transfer rule. In addition, the appellants sought reimbursement for those amounts which they had been forced to pay because of the state's transfer rule. The district court certified a class consisting of all those who had been denied Medi-Cal benefits based on California's transfer rule.

On May 10, 1979, the district court granted California's motion for summary judgment and denied the cross motion filed by the appellants. The court entered findings of fact and conclusions of law which held that the state's transfer rule did not conflict with the federal statutory and regulatory framework, nor did it amount to a denial of due process or equal protection. The appellants then brought this appeal.[6]

## II. DISCUSSION

■ The appellants make five distinct arguments against California's transfer rule. They claim that it creates an irrebuttable presumption in violation of the due process clause. Since the rule only applies to the

medically needy, they contend that it also violates the equal protection clause. Furthermore, the appellants claim that the transfer rule conflicts with two different sections of the federal statutes (42 U.S.C. §§ 1396a(a)(10)(C), 1396a(a)(17)(B), as well as one section of the federal regulations (42 C.F.R. § 435.401). We address the challenges based on the federal statutes and regulations first because if the appellants' arguments are correct, we would not need to reach the constitutional issues. *Dandridge v. Williams*, 397 U.S. 471, 475–476, 90 S.Ct. 1153, 1156–1157, 25 L.Ed.2d 491 (1970). Moreover, in addressing appellants' arguments, the cardinal principle of statutory construction must be kept in mind, that is, statutes should be construed to avoid constitutional questions. *See Swain v. Pressley*, 430 U.S. 372, 378 n. 11, 97 S.Ct. 1224, 1228 n. 11, 51 L.Ed.2d 411 (1977).

### A. 42 U.S.C. § 1396a(a)(10)(C)

Appellants' primary argument is that the California transfer rule conflicts with 42 U.S.C. § 1396a(a)(10)(C), which requires states providing benefits to the *medically needy* to cover "all individuals who would, except for income and resources" be eligible for SSI (and therefore come under the *categorically needy* classification), "and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services."[7] The appellants attribute the following

---

6. The district court concluded that it had jurisdiction under 28 U.S.C. § 1343(3) & (4) (civil rights jurisdiction) and under 28 U.S.C. § 1331 (federal question jurisdiction). It is unclear whether jurisdiction was properly invoked under 28 U.S.C. § 1343. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Doe v. Klein*, 599 F.2d 338 (9th Cir. 1979). Nevertheless, the amount in controversy exceeds $10,000 and so the district court did clearly have federal question jurisdiction (28 U.S.C. § 1331). *Brown v. Stanton*, 617 F.2d 1224, 1226 n. 1 (7th Cir. 1980); *see Chapman, supra*, 441 U.S. at 604, 99 S.Ct. at 1909, 60 L.Ed.2d at 515. Since the appellants filed a timely notice of appeal from

the final judgment, this court has jurisdiction to consider the appeal under 28 U.S.C. § 1291.

7. This statute provides, in part, as follows:
 "A state plan for medical assistance must—provide—
 "(C) if medical assistance is included for any group of individuals who are not described in clause (A) and who do not meet the income and resources requirements of the appropriate State plan, or the supplemental security income program under subchapter XVI of this chapter, as the case may be, as determined in accordance with standards prescribed by the Secretary—
 "(i) *for making medical assistance available to all individuals who would, except for*

meaning to § 1396(a)(10)(C): "except for the definitional distinction that the medically needy may have higher income and resource levels, the states must use the same rules for the medically needy as for the categorically needy."

Under the Social Security Act, an SSI applicant whose assets exceed the eligibility levels may dispose of the excess assets in order to become eligible for SSI payments. 42 U.S.C. § 1382b(b). This has been administratively interpreted to permit the transfer of the excess assets for less than adequate consideration or as a gift. Social Security Claims Manual § 12507(a). According to the appellants, since transfer rules cannot be applied to SSI applicants (i. e., the *categorically needy*), they therefore cannot be applied to the *medically needy*.

The court below rejected the appellants' reasoning and concluded that the California transfer rule did not conflict with § 1396a(a)(10)(C). The court agreed with the appellants that California could not employ any substantive eligibility requirements on the *medically needy* which were more restrictive than those used for the *categorically needy*. Nevertheless, the court characterized the transfer rule as a collateral or procedural eligibility requirement which was permissible under the Social Security Act. While we agree with the district court that the California transfer rule does not conflict with § 1396a(a)(10)(C),

we do not accept the semantic distinction which was relied upon.

■ We believe that the California transfer rule is properly characterized as a substantive eligibility requirement. It directly applies to the state's determination of whether an applicant's assets exceed the eligibility requirements.

■ In considering the appellant's argument, we must first turn to the language of the statute itself. Obviously, the face of this statute says nothing about prohibiting transfer rules such as California's.[8]

■ The portion of the statute with which we are concerned may be divided into two parts. The first part provides that the medically needy group includes all who would, except for their income and resources, be eligible for SSI. The second part provides that the medically needy group includes all who have insufficient income and resources, as determined under comparable standards, to pay for their medical care.

The first part specifically excepts income and resources when it equates SSI eligibility to the *medically needy* eligibility requirements. And so, while this provision does extend all of the SSI eligibility requirements to the *medically needy*, it does not do so for those which deal with the applicant's income and resources. Were this not the

---

*income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them supplemental security income benefits under subchapter XVI of this chapter, and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services, and*

"(ii) that the medical assistance made available to all individuals not described in clause (A) shall be equal in amount, duration, and scope;

* * * "

(emphasis added to show that portion of the statute which the appellants rely upon)

42 U.S.C. § 1396a(a)(10).

**8.** At one point, appellants suggest that states can only use requirements which are explicitly authorized by the federal statute. We were unable .to find any provision of the statute which said this. In the absence of some expression by Congress to the contrary, we decline to read such a prohibition into a statute which is, after all, establishing a *cooperative* federal state program. *See, New York Department of Social Services v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) ("It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of an intention to do so." 413 U.S. at 413, 93 S.Ct. at 2513, *quoting Schwartz v. Texas,* 344 U.S. 199, 202–203, 73 S.Ct. 232, 234–235, 97 L.Ed. 231 (1952)).

case, then there would be no distinction between the two groups. There can be no question but that the California transfer rule is an eligibility requirement which pertains to the applicant's income and resources. It therefore clearly comes within the exception to the first clause of the statute.

The second part may be read as requiring that the evaluation of the applicant's income and resources be determined by using comparable standards. Since an SSI applicant is apparently specifically allowed to transfer assets in the manner which is prohibited by the California transfer rule, we are faced with an inconsistent standard. Nevertheless, this does not make the California rule necessarily in conflict with this part of the statute. After all, the statute only requires the standards to be comparable, not identical. Comparable only means that there must be enough similar characteristics or qualities to make comparison appropriate. Webster's Third New International Dictionary, G. & C. Merriam Co. (1976). The other standards which are used for determining financial eligibility are similar enough to invite comparison. We therefore cannot say that the standards used by California to determine eligibility into the *medically needy* group (including the transfer rule) are not comparable to those which are used under the SSI program.

■ In support of their argument, the appellants claim that HEW, the agency charged with administering the Medicaid program, has interpreted § 1396a(a)(10)(C) in the same manner as they would have this court. Apparently, three different HEW Regional Medical Directors have written letters stating that state transfer rules are inconsistent with § 1396a(a)(10)(C) because they impose more restrictive eligibility requirements on the *medically needy* than on SSI applicants. *See Fabula v. Buck*, 598 F.2d 869, 873 (4th Cir. 1979). Although this court generally defers to an administrative agency's interpretation of the law which it is charged with administering, we are by no means bound by the agency's interpretation. *Pacific Coast Medical Enterprises v. Harris,* slip op. 2516, 2525–2526 (9th Cir. March 28, 1980); *Baker v. United States,* 613 F.2d 224, 226–227 (9th Cir. 1980).

In the present case, we not only refuse to follow the letter interpretations, but we also refuse to attach any weight to them. Initially, we are convinced that our interpretation of § 1396a(a)(10)(C) is correct, that is, the California transfer rule does not conflict with the statute. This court's "deference does not extend to agencies' construction which conflict with statutory directives." *Pacific Coast, supra,* slip op. at 2526. While regional administrators may be writing letters disapproving of state transfer rules, HEW as a whole has approved California's Medi-Cal program (and the transfer rule). By this approval, and by not taking any action against California because of the transfer rule, HEW "has in effect expressed its view that the plan is in compliance with applicable statutory and regulatory requirements." *Michael Reese Physicians & Surgeons, S. C. v. Quern,* 606 F.2d 732, 735–736 (7th Cir. 1979). Based on the preceding, not only do we believe that the letter rulings should not be followed, but we also believe that HEW's general acceptance of California's Medi-Cal program supports our interpretation.

■ As further support for their argument under § 1396a(a)(10)(C), the appellants rely upon the subsequent legislative history of the Medicaid program. In 1978, as part of the Medicare-Medicaid Administrative and Reimbursement Reform Act, the Senate Finance Committee proposed an amendment to the Medicaid statute which would have specifically required states to adopt transfer rules such as California's. S.Rep.No. 95–1111, 95th Cong., 2d Sess., 24–25 (1978). Apparently, relying upon what we have already concluded was an erroneous agency interpretation of § 1396a(a)(10)(C), the Senate Committee

said that the states were not able to adopt transfer rules under present law. *Id.* We recognize that the pronouncements of legislative committees as to the meaning of previously enacted statutes are often afforded considerable deference. *Sioux Tribe of Indians v. United States*, 316 U.S. 317, 329–330, 62 S.Ct. 1095, 86 L.Ed. 1501 (1942). Nevertheless, courts are not bound by such pronouncements and it has been suggested that subsequently expressed Congressional views should not be relied upon at all. *Mathews v. Weber*, 423 U.S. 261, 272 n. 7, 96 S.Ct. 549, 555 n. 7, 46 L.Ed.2d 483 (1976). Since the Senate Committee was apparently relying upon the erroneous administrative interpretation, and because we remain convinced that our interpretation of § 1396a(a)(10)(C) is correct, we choose not to accord any deference to the latter legislative pronouncements.

We conclude that California's transfer rule does not conflict with 42 U.S.C. § 1396a(a)(10)(C).

### B. *42 U.S.C. § 1396a(a)(17)(B)*

The appellants argue that the California transfer rule violates 42 U.S.C. § 1396a(a)(17)(B).[9] This section requires states to only consider the income and resources which are "available" to the appli-

cant in determining eligibility. The California transfer rule assumes the availability of assets, which, according to the appellants, are no longer available to the applicant.

The appellants' argument may be correct under what we believe is an overly rigid and literal interpretation of the term "available" under § 1396a(a)(17)(B). We refuse to interpret this statute as equating available with present record title. This would be inconsistent with the approach which is taken under the Medicaid program.

■ Initially, "we do not lose sight of the [Medicaid] statute's strong emphasis upon flexibility in determining eligibility." *Norman, supra*, 610 F.2d at 1240. In another context the Supreme Court interpreted § 1396a(a)(17) as conferring broad discretion on the states to adopt reasonable standards. *Beal v. Doe*, 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977).[10] The California transfer rule presumes that an asset remains available to an applicant after the applicant has given it away, or sold it for less than adequate consideration. We find nothing in the plain language of this statute which would prohibit such a rule, nor is there anything in the legislative history which equates "available" as requiring present record title or ownership.

---

**9.** This statute provides in part as follows:

"A state plan for medical assistance must—

"include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, and with respect to whom supplemental security income benefits are not being paid under subchapter XVI of this chapter based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) *provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available*

*to the applicant or recipient and* (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter as would not be disregarded (or set aside for future needs) *in determining his eligibility for such aid, assistance, or benefits* . . .
* * *"

(emphasis added to show that portion of the statute which the appellants rely upon)

42 U.S.C. § 1396a(a)(17).

**10.** The Supreme Court was considering the extent of medical assistance which the states were required to provide. *Beal, supra*, 432 U.S. at 444, 97 S.Ct. at 2370.

■ To the extent that the regulations address the definition of "available," they support our interpretation. Under the regulations, a state is allowed to examine an applicant's income and assets for a six-month prospective period in determining eligibility. 42 C.F.R. §§ 435.831(a), 435.-845(b). Since a state is authorized to consider future assets, it must follow that it should also be allowed to consider those assets which have been recently disposed of under circumstances which indicate that the purpose was to qualify for public medical assistance.

We hold that California's transfer rule does not conflict with 42 U.S.C. § 1396a(17)(B).

### C. 42 C.F.R. § 435.401

■ Appellants also claim that the California transfer rule is inconsistent with 42 C.F.R. § 435.401.[11] This regulation provides that a state Medicaid agency cannot use requirements for determining eligibility for the *medically needy* which are "more restrictive" than those used for the *categorically needy.* Since the California transfer rule is a more restrictive requirement, the appellants reason that it therefore violates § 435.401.

While we agree that the California transfer rule imposes a more restrictive requirement on the *medically needy,* we do not believe that § 435.401 has any bearing on the validity of financial eligibility requirements such as the transfer rule.

First of all, if we were to give § 435.401 the broad reading attributed to it by the appellants, we would be reading an inconsistency into the federal statutory and regulatory framework. The Medicaid program is designed to provide benefits to two differently situated groups. The *medically needy* are those individuals who have more available income and resources than the *categorically needy.* By definition, different financial requirements apply to the *medically needy* than to the *categorically needy.* Only when § 435.401 is read as not applying to financial requirements, such as the transfer rule, can it be viewed consistently with the other Medicaid statutes and regulations.

After all, § 435.401 is merely one of five sections under the general heading entitled: *"Subpart E—General Eligibility Requirements".* There is absolutely no discussion of financial eligibility requirements in any of the other sections of this subpart. Instead, the focus of all of the sections is directed toward much more general concerns, such as eligibility requirements which are based on citizenship, alienage, or state residence. In addition, a thorough reading of the statutes and regulations shows that the sections of Subpart E parallel the subsections of 42 U.S.C. § 1396a(b). From this it is apparent that Subpart E (including § 435.401) was designed to carry out the statutory mandate of 42 U.S.C. § 1396a(b) which does not involve financial eligibility requirements. *See, e. g., Pacific Coast, supra,* slip op. at 2526.[12] And finally, there are three specific subparts which cover the financial eligibility requirements. Subpart G states the general financial eligibility re-

11. This regulation provides as follows:
"(a) A medicaid agency may not impose any eligibility requirement that is prohibited under title XIX of the Act.
"(b) The agency must base any optional group covered under subparts B and C of this part on reasonable classifications that do not result in arbitrary or inequitable treatment of individuals and groups and that are consistent with the objectives of title XIX.
"(c) *The agency must not use requirements for determining eligibility for optional coverage groups that are* —
"(1) For families and children, more restrictive than those used under the State's AFDC plan; and

"(2) *For aged, blind, and disabled individuals, more restrictive than those used under SSI,* except for individuals receiving an optional State supplement as specified in § 435.230 or individuals in categories specified by the agency under § 435.121."
(emphasis added to show that portion of the regulation which the appellants rely upon) 42 C.F.R. § 435.401.

12. In *Pacific Coast, supra,* this court noted that "[e]xisting regulations must be construed in light of the statutory mandates under which they issue." Slip op. at 2526.

quirements, Subpart H states the financial eligibility requirements for the *categorically needy*, and Subpart I states the financial eligibility requirements for the *medically needy*. These specific and detailed guidelines for financial eligibility requirements must control over the general rule of § 435.401.

We conclude that 42 C.F.R. § 435.401 does not apply to financial eligibility requirements and therefore there is no conflict between it and the California transfer rule.

### D. *Due Process*

 In their opening brief, the appellants claim that the transfer rule creates an irrebuttable presumption in violation of the due process clause. In their reply brief, the appellants call it an "effectively" irrebuttable presumption. We disagree with either characterization and find that the transfer rule creates a rebuttable presumption which is permissible under the due process clause.

The California transfer rule obviously does not create an irrebuttable presumption. After all, the regulations expressly provide that the presumption may be overcome by evidence that the applicant had adequate resources for support and medical care at the time of the transfer of property. 22 Cal.Admin.Code § 50409(b)(2). Such a determination can be based on "such things as the applicant's . . . age, health, life expectancy, and ability to understand [the] extent of [his or her] resources." *Id.* This would mean that if a person was in good health at the time of the transfer, then the presumption might be rebutted because the person would have no reason to anticipate any large expenditure for medical care and support.

The appellants argue that it is an "effectively" irrebuttable presumption because the applicant is precluded from relying on his or her subjective intent. According to the appellants, this excludes the two most likely explanations for this type of transfer,

which are: (1) the applicant was unaware of Medi-Cal benefits, and/or (2) a desire to avoid probate. While the state could have considered these subjective considerations, we cannot say the failure to do so creates a due process violation. California's objective test for determining how the presumption can be overcome does not create an effectively irrebuttable presumption which might run afoul of the due process clause.

### E. *Equal Protection*

 The appellants' final argument is based on equal protection grounds. They claim that there is no rational basis for treating the *medically needy* any differently from the *categorically needy*. According to the appellants, the *medically needy* are in the identical situation as the *categorically needy*, that is, in need of medical care and without sufficient income or resources to pay for it. Since the "transfer of assets" rule only applies to the *medically needy*, the appellants argue that it violates the equal protection clause because there is no reasonable basis for the disparate treatment between the two groups.

We fail to see how the application of the transfer of assets rule to the *medically needy* group gives rise to even a colorable constitutional claim under the equal protection clause.

Initially, we note that the two groups are not identically situated. By definition, the *categorically needy* have less income and resources than the *medically needy*. Furthermore, Congress has obviously viewed the two groups differently, or, at least, as not being identically situated. Why else would Congress have left the decision to provide benefits to the *medically needy* entirely up to the individual state? It must be remembered that the *categorically needy* receive benefits regardless of whether a state adopts a medicaid program under Title XIX. However, the *medically needy* only become entitled to benefits if a state

first adopts a program, and, secondly, if the state elects to include the *medically needy* group in its benefit program.

In addition, California has a rational basis for its transfer rule. California is confronted with two competing interests, the protection of a limited public treasury, and the provision of benefits to those who are in need. The transfer rule was a reasonable response to these conflicting concerns. Under the rule, benefits are provided to those individuals who, in fact, have a financial need, and benefits are denied to the individuals who have artificially created a need by disposing of assets for less than fair consideration.

We hold that California's transfer rule is rationally related to the legitimate government objectives of protecting the public treasury and discouraging intentional impoverishment so as to qualify under a public assistance program. Any disparate treatment resulting from the application of the rule is sufficiently rational to be upheld against appellants' equal protection challenge. *See Dandridge, supra,* 397 U.S. at 471, 90 S.Ct. at 1153; *Richardson v. Belcher,* 404 U.S. 78, 83–84, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1972); *Sims v. Harris,* 607 F.2d 1253 (9th Cir. 1979).

### III. *CONCLUSION*

In upholding the California transfer rule, we recognize that the majority of the courts which have been faced with similar challenges have reached the opposite conclusion. *See, e. g., Caldwell v. Blum,* 621 F.2d 491, (2d Cir. 1980); *Fabula v. Buck,* 598 F.2d 869 (4th Cir. 1979); *Udina v. Walsh,* 440 F.Supp. 1151 (E.D.Mo.1977); *Buckner v. Maher,* 424 F.Supp. 366 (D.Conn.1976), *aff'd* 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184; *Owens v. Roberts,* 377 F.Supp. 45 (M.D.Fla. 1974); *contra, Rinefierd v. Blum,* 66 A.D.2d 351, 412 N.Y.S.2d 526 (1979); *Lerner v.*

*Division of Family Services,* 70 Wis.2d 670, 235 N.W.2d 478 (Wis.1975). Nevertheless, for the reasons stated in this opinion, we are convinced that our analysis of the question is correct.

AFFIRMED.[13]

---

**13.** Appellants also ask this court, providing they prevail on this appeal, to grant the full measure of relief requested in their complaint and provide notice to all class members. Be-

cause we affirm the district court, it is unnecessary for us to address the propriety of this request.